## Marshall Field *et al.*

*v.*

## Henry A. Barling *et al.*

*Filed at Springfield April 2, 1894.*

1. STREETS—*appropriation of part of its surface to private use.* A private individual can not appropriate to his own exclusive use a portion of the surface of a street dedicated to the public use; and the dedication of a strip of land for a public street embraces not only the surface of the ground, but the light and air above, and an individual has no more right to obstruct the light and air above the street than he has to obstruct the surface of the soil.

2. Where a strip of land is declared a public highway, the adjoining owner has the right to light and air from it. The column of light and air above the road-bed, whether of land or water, is as much a part of the highway as the road-bed itself; and when cities and villages have been built up along a public highway, the right to light and air from it becomes vested, and even the legislature has no power to deprive such abutting owners of that right without making just compensation.

3. SAME—*municipal control over streets and alleys.* Clause 7 of section 62, chapter 24, relating to cities and villages, confers power on cities organized under the general Incorporation act to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, harbors and public grounds, and vacate the same. But there is nothing in any part of the general act which confers the power on the municipality to devote a street, or any part thereof, to a mere private use.

4. SAME—*statutory dedication.* Where the owner of land plats the same into lots, streets and alleys, in the manner required by law, there will be a statutory dedication of the streets and alleys, and the fee to the same will be vested in the city or village, in trust for the public, and for no other purpose.

5. SAME—*enjoining construction of a bridge across a public alley— rights of owners of lots abutting on alley.* Where the original proprietor of an addition to a city makes a plat thereof, dividing the land into blocks and lots, streets and alleys, and sells and conveys the lots with reference to the plat, a right will arise in favor of the purchasers of lots fronting upon an alley, of having the alley forever kept open,— not that it shall be kept free from obstruction on the surface of the soil, but to the sky,—and no grant or covenant will be required to create this right. If a party seeks to construct a bridge across the alley

so as to connect the buildings on each side of the same, a party whose lot abuts on the same alley may enjoin the construction of such obstruction. The right may be regarded as in the nature of an incorporeal hereditament, and appurtenant to the lots. The right of the holder of such easement is to have the street kept open, so that free access may be had to and from the lots abutting on the street, and that light and air may pass unobstructed across the open space between the surface of the street and the sky.

6. A bill of complaint sought to enjoin the construction of a bridge over an alley, which was described according to information then in the possession of the complainants. The defendants, by their answer, admitted their intention to build the proposed bridge, and described in detail the particular structure proposed to be built, giving the length, width, etc. On the hearing a decree was entered enjoining the defendants from constructing any bridge across the alley: *Held*, that the decree was correct, and was properly not limited to the particular kind of structure described in the defendants' answer.

7. INJUNCTION — *obstruction of right of way — irreparable injury.* Irreparable injury, as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the very best reason why a court of equity should interfere in a case where the nuisance is a continuing one.

8. EASEMENT—*sale of lots with reference to alley—rights of purchaser.* Where the owner of lots exhibits a plat of a town or addition in which a street has been laid out and dedicated, and sells and conveys lots abutting on such street with a clear reference to the plat, the purchaser of such lots will acquire, as appurtenant to the lots, the right to have the street kept open and maintained.

9. It is not necessary, in such case, that the easement claimed by the grantee be really necessary for the enjoyment of the estate granted. It is sufficient if it is highly convenient and beneficial for such purpose.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. WILSON, MOORE & McILVAINE, for the appellants :

Appellees are not entitled to a decree in a court of chancery enjoining any bridge across Holden Place, without alleging and proving that they would sustain a special and substantial injury therefrom. *McDonald* v. *English*, 85 Ill. 232.

Field never entered into any contract or covenant, express or implied, in regard to Holden Place. It is not claimed that either Field or his grantors ever made any express agreement in regard to Holden Place. Holden Place was dedicated and accepted by the public prior to the sale of any of the lots abutting upon the same. The title to the land in Holden Place vested in fee in the city of Chicago. *Railroad Co.* v. *Illinois,* 146 U. S. 462.

A private party can not obtain relief in a court of equity for an alleged obstruction of a public street, unless he sustains a special injury, different in kind from the public, and substantial in its nature. There is no exception to the rule in the case of streets dedicated by plat. *Coal Co.* v. *LaSalle,* 136 Ill. 128; *Quincy* v. *Bull,* 106 id. 349; *Gas Light Co.* v. *Town of Lake,* 130 id. 54; *McDonald* v. *English,* 85 id. 232.

The special injury is the gist of the action, and unless it is alleged and proved there can be no recovery. *Dunning* v. *Aurora,* 40 Ill. 481; *Francis* v. *Schoekopf,* 53 N. Y. 155; *Pierce* v. *Dart,* 7 Cow. 609; *Lake View* v. *Letz,* 44 Ill. 81; *Clark* v. *Donaldson,* 104 id. 639.

In sustaining the contention of counsel for appellees, that complainants were entitled to enjoin the construction of any bridge across the alley without showing that any injury would result therefrom, the circuit court based its decision upon the following cases: *Zearing* v. *Raber,* 74 Ill. 412; *Newell* v. *Sass,* 142 id. 104; *Earll* v. *Chicago,* 136 id. 277.

That there is no difference or distinction in the rights or interest of an abutting owner in a street dedicated, from that acquired by condemnation, was expressly held in the case of *Lahr* v. *Railroad Co.* 104 N. Y. 289, and was also expressly held or recognized in *Heller* v. *Railroad Co.* 28 Kan. 625, and *Mercer* v. *Railroad Co.* 36 Pa. St. 103.

Mr. JOHN J. HERRICK, for the appellees:

The permanent occupation of a part of the surface of a street, even for a municipal purpose, is an unauthorized and illegal obstruction of the street. *City of Morrison* v. *Hinkson*, 87 Ill. 587.

It is clear that the rights of the public and of the abutting lot owners extend to the air and light above, as well as to the surface. *Barnett* v. *Johnson*, 15 N. J. Eq. 481; *Receiver's Appeal*, 100 Pa. St. 182; *Story* v. *Railway Co.* 90 N. Y. 123; *Schworer* v. *Market Ass.* 99 Mass. 285; *Salisbury* v. *Andrews*, 128 id. 336; *Attorney General* v. *Algonquin Club*, 153 id. 447.

The power of a city to regulate the use of a street is limited to regulations affecting its use for the particular purpose for which it was dedicated. *City of Morrison* v. *Hinkson*, 87 Ill. 587; *Stack* v. *East St. Louis*, 85 id. 377.

Appellees have a legal right, derived by grant, and appurtenant to their lots, to have Holden Place kept open for use for all the purposes of a street, free from obstruction by appellants.

The following propositions of law are established by repeated and uniform decisions of this court:

*First*—If the owner of land exhibits a plat of a town or addition or subdivision, on which a street is defined, and sells lots abutting on such street, and with clear reference to the plat, the purchasers of such lots acquire, as appurtenant to their lots, the right to have the street kept open as a street. *Earll* v. *Chicago*, 136 Ill. 285; *Zearing* v. *Raber*, 74 id. 409; *Maywood Co.* v. *Village of Maywood*, 118 id. 61; *Lake View* v. *LeBahn*, 120 id. 92; *Newell* v. *Sass*, 142 id. 104.

*Second*—The right thus passing to the purchasers is not a mere right that the purchaser may use the street, but that all persons whatever, as their occasion may require or invite, may so use it. Ibid.

*Third*—The sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots, and

their grantees, binding on all abutting lot owners claiming
title from the original proprietor as the common source, that
the public street indicated upon the plat shall be forever open
for use as a street, free from all claim or interference of the
proprietor, or those claiming under him, inconsistent with its
use.   Ibid.

Appellees' right is not a mere common law right to light,
air and passage.   It rests on grant and covenant.   The juris-
diction of equity to protect, by injunction, a legal right of this
character from continuous infringement, is well established.
*Earll* v. *Chicago*, 136 Ill. 285; *Zearing* v. *Raber*, 74 id. 409;
*Schworer* v. *Market Ass.* 99 Mass. 285; *Salisbury* v. *Andrews*,
128 id. 336; *Newell* v. *Sass*, 142 Ill. 104; *Dill* v. *School Board*,
47 N. J. Eq. 421.

In this view, the question is not as to the amount of dam-
age, but as to the right, and the mere fact of a threatened
continuous infringement of this right gives a court of equity
jurisdiction.

The right vested in appellees is in the nature of an ease-
ment in the land itself—an easement of light, air and passage.
*Story* v. *Railway Co.* 90 N. Y. 123; *Lahr* v. *Railroad Co.* 104
id. 268; *Lake View* v. *LeBahn*, 120 Ill. 92.

The right to an injunction to prevent a threatened interfer-
ence with an easement is well settled.   *Newell* v. *Sass*, 142
Ill. 104.

It was held in the following cases, that in case of a dedica-
tion by plat, the title, whether vested in the municipality or
remaining in the original proprietor, is held in trust, and that
the abutting lot owners are beneficiaries, as well as the public
at large, and have a vested estate, which a court of equity
will protect by enforcing the trust:   *Carter* v. *Chicago*, 57 Ill.
283; *Jacksonville* v. *Railway Co.* 67 id. 540; *Maywood Co.* v.
*Village of Maywood*, 118 id. 61; *Earll* v. *Chicago*, 136 id. 285.

The very fact that the injury will be continuous, and that
the only remedy at law will be repeated actions, each of which

may only result in a recovery of nominal damages, is in itself a recognized ground of jurisdiction in equity. *Clowes* v. *Staffordshire,* L. R. 8 Ch. App. 125; *Wahle* v. *Reinbach,* 76 Ill. 326; *Newell* v. *Sass,* 142 id. 104; *Dill* v. *School Board,* 47 N. J. Eq. 421; Elliott on Roads, 497.

The court below did not err in not limiting the injunction to the particular structure, and in enjoining appellants from building any connecting structure over Holden Place, between Washington street and appellees' building.

Mr. GEORGE PADDOCK, also for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by Henry A. Barling, Edward H. Green and Edward D. Mandell, trustees under the will of Edward Mott Robinson, deceased, against Marshall Field and others, to enjoin them from building or constructing any building, bridge, passageway or other construction on, upon or across the alley known as "Holden Place" or "Court," between the north line of Washington street and complainants' property described in the bill. The block in the city of Chicago bounded by Wabash avenue, Randolph, State and Washington streets is known as block 13 of Fort Dearborn addition to Chicago. The land, when platted, belonged to the United States, and the plat of Fort Dearborn addition was executed and recorded in June, 1839. The following plat shows State street, Washington street, Wabash avenue and Randolph street as originally laid out, and also Holden Place. The plat also shows the location of complainants' property, and the location of Field's old building and the new one, and the point where it was proposed to erect the bridge across Holden Place, connecting the two buildings:

Holden Place, as will appear from the plat, is forty feet wide, extending north and south through blocks 13 and 14,

with lots on each side, those on the east fronting on Wabash avenue and those on the west fronting on State street. Holden Place has been used as a public place or street for many years. The defendants' lots on the north-east corner of Washington and State streets have a frontage of one hundred and sixty feet on State, extending back to Holden Place, covered by a six-story building, occupied by Marshall Field & Co. for several years as a dry goods house. The defendants have acquired lots on the north-west corner of Wabash avenue and Washington street, with a frontage of one hundred and eight feet on Wabash avenue, extending back to Holden Place. On the latter lots the appellants commenced the erection of a new building nine stories high. At the time of the filing of the bill the new building had been erected six stories high, and the appellants were about to commence the erection of a bridge or passageway over Holden Place, connecting the old and new buildings. The bridge or passageway, as disclosed by the answer, was to be eighteen feet above the surface of Holden Place, three stories in height, extending north from Washington street over the alley, the entire width of the alley, the distance of forty-five feet, and upwards fifty-five feet, or seventy-three feet above the ground.

It is charged in the bill "that the effect of said construction of such connecting building, if the same be not prevented by this honorable court, will be to deprive your orator's said building and the occupants thereof, to a great extent, of sunshine, light, air and warmth, which they have hitherto enjoyed by reason of the opening and keeping open of said court or alley from the time of said platting and subdivision down to the present; will give said alley an appearance of a private gateway and passage; will hinder and deter traffic, and in many other ways cause serious and continuing damage to your orators and their property; that such damage will amount to many thousands of dollars, and will be beyond legal remedy or relief if not prevented by this court." It is

also alleged that orators, and Marshall Field & Co., and the other defendants, hold their respective lands in said block 13 under a common source of title, viz., the United States, by patents made by the United States in pursuance of a subdivision, plat, and sales by the United States; that by reason of the exhibition and publication of the said subdivision and plat, and by the sale of lots thereunder to the respective grantors of your orators, and the said defendants, Marshall Field & Co., or said Marshall Field, for their use, there has resulted, as between your orators and the said Marshall Field & Co., or such of them as own the said properties so fronting south on Washington street, on either side of said alley, a right, in law, to have the said alley remain absolutely and wholly open forever, of the same dimensions and to the same extent as delineated by the United States upon the subdivision and plat aforesaid, viz., from the north line of Washington street, forty feet in width, to the south line of Randolph street, and upwards to the sky.

In the answer appellants admit the intention to build the proposed bridge or structure over and across Holden Place, but deny that it will interfere with the light, air and ventilation of complainants' premises, or that it will in any manner injure complainants. The appellants also set up and rely upon an ordinance set out in complainants' bill, passed by the city of Chicago, June 6, 1892. Section 1 of the ordinance is as follows:

"*Be it ordained by the City Council of the City of Chicago:*

"SECTION 1. That permission and authority be and is hereby given to John M. Pashley, and his assigns, to construct and use a bridge or covered passageway across the alley running between lots 9, 10 and 11 on one side, and lot 6, in assessor's subdivision of lots 6, 7 and 8, etc., on the other, all in block 13, Fort Dearborn addition to Chicago, provided the lowest portion of said bridge or passageway shall not be lower than eighteen feet above grade of alley, and shall be so constructed

that free and unobstructed passage may be had under the same, and provided that said bridge or passageway shall be constructed of incombustible material, and to the satisfaction of the commissioner of buildings."

Section 2 provides that Pashley or his assigns, and all persons who shall occupy the buildings which the bridge is to connect, shall indemnify and save the city of Chicago harmless from all damages for which it may become liable by reason of the passageway granted.

It will not be necessary to cite authorities in support of the proposition that a private individual can not appropriate to his own exclusive use a portion of the surface of a street dedicated to the public use. Before Holden Place was dedicated to the public as a street, the title of the United States, the original proprietor, was not confined to the surface of the ground, but its title extended upward, embracing the light and air as well as the soil, and the dedication of the strip of land for a public street embraced not only the surface of the ground, but the light and air above, and an individual has no more right to obstruct the light and air above the street than he has to obstruct the surface of the soil.

In *Barnett* v. *Johnson*, 15 N. J. Eq. 481, where it was proposed to obstruct light and air over ground dedicated to the public, it is said: "When the strip of land is declared a public highway, the adjoining owner has the right to light and air from it. The column of light and air above the road-bed, whether of land or water, is as much a part of the highway as the road-bed itself. Take them away and there would be left no public passage. By its being declared a highway by the sovereign power, the light and air above it become again the common property of all, which all may breathe and use whenever they may legally touch it, whether in the road or along its sides. * * * When cities and villages have been built up along a public highway, the right to light and air from it becomes vested, and even the legislature would have no more

right to deprive them (abutting owners) of it without compensation than they would have to draw off the water from a navigable stream."

But the city of Chicago passed an ordinance which purported to authorize the construction of a bridge or passageway, and it becomes important to inquire in what manner the ordinance affected the rights of the parties in interest. The ordinance does not purport to grant the right for any public purpose. The use to be made of the street is a private one, solely for appellants' benefit in the transaction of their private business. Clause 7 of section 62, chapter 24, of the Revised Statutes, confers power on cities organized under the general Incorporation act, as is the city of Chicago, to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharfs, parks and public grounds, and vacate the same. But there is nothing in this section of the statute, or in any other portion of the general Incorporation act, which confers the power on the municipality to devote a street, or any part thereof, to a mere private use. By the making of the plat in conformity to law there was a statutory dedication. The fee of the street passed to the city of Chicago, but the city held the fee in trust for the public, and for no other purpose. While the city had ample power to control, regulate and improve the street in such manner as the demands of the public required, the law conferred no authority on the city to devote the alley to private uses.

In the late case of *Smith* v. *McDowell*, 148 Ill. 51, where a city passed an ordinance to vacate a portion of a street for the purpose of allowing a private individual to use that portion for a part of a building about to be erected, it was held that the city had no power to devote the streets to that purpose. It is there said: "The municipality, in respect of its streets, is a trustee for the general public, and holds them for the use to which they are dedicated. The fundamental idea of a street is not only that it is public, but that it is public

in all its parts, for free and unobstructed passage thereon by all persons desiring to use it. In *Alton* v. *Illinois Transportation Co.* 12 Ill. 38, we said, in treating the subject there under consideration: 'Whatever title to these public grounds may be vested in the city, she has not the unqualified control and disposition of them. They were dedicated to the public for particular purposes, and only for such purposes can they be rightfully used. For these purposes the city may improve and control them and adopt all needful rules and regulations for their management and use, but she can not alien or otherwise dispose of them. At most, she but holds them in trust for the benefit of the general public.' In *Quincy* v. *Jones*, 76 Ill. 231, after quoting with approval the foregoing language, it is said: 'It is the unquestioned duty of the city, in controlling and improving the streets, to prepare them for public use as streets, * * * as the public necessity may require. Holding them in trust for the public, and having no authority to convey or divert them to other uses, it would seem inevitably to follow that they can have no power to grant to individuals rights or easements in the streets which might in any way interfere with the duty of preparing them for public use.' And in *Canal Co.* v. *Garrity*, 115 Ill. 155, in considering the power of the municipality to grant rights in the public streets of the city, it was said: 'It is not claimed that the use of the streets can be permanently granted for private purposes, and we recognize as unquestionable law that the use of the streets * * * must be for the public, and that no corporation or individual can acquire an exclusive right to their use, or to the use of any part of them, for private purposes.' In *Glasgow* v. *St. Louis*, 87 Mo. 678, under power 'to establish, open, vacate, alter, widen, extend, pave or otherwise improve all streets,' etc., it was held that an ordinance to vacate a portion of one of the streets of the city for the use of private parties was *ultra vires*. See, also, *Reimer's Appeal*, 100 Pa. St. 182; *St. Vincent Orphan Asylum* v. *Troy*, 76 N. Y. 108; *State* v.

*Berdetta,* 73 Ind. 185; *Belcher Sugar Refining Co.* v. *St. Louis Grain Elevator Co.* 82 Mo. 127; *Dubach* v. *Railroad Co.* 89 id. 486. And we held that the city can not acquire land by condemning the same for a street, when the real purpose is to devote it to a private use. (*Ligare* v. *City of Chicago,* 139 Ill. 46.) In the *Belcher Sugar Refining Co. case, supra,* the court held that the corporation could not condemn property for a public use, to be appropriated to a private use."

But it is claimed that appellees are not entitled to a decree unless they allege and prove they would sustain a special and substantial injury. It is conceded that both parties in this case derive title to their lots from a common source,—the original proprietor of Kinzie's addition; that the conveyances were made with reference to the plat; that the streets and the alley in question, Holden Place, àll appear in the plat. It is claimed on behalf of appellees, that where the owner of lots exhibits a plat of a town or addition, in which a street has been laid out and dedicated, and sells and conveys lots abutting on such street with a clear reference to the plat, the purchasers of such lots acquire, as appurtenant to their lots, the right to have the street kept open and maintained as a street.

In *Zearing* v. *Raber,* 74 Ill. 409, where a similar question arose, the court quotes from and indorses what is said in Smith's Leading Cases, as follows: "If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them as part of the town, or to their owners, as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchasers may use these streets or other public places according to their appropriate purposes, but a right vesting

in the purchasers that all persons whatever, as their occasion may require or invite, may so use them,—in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places, indicated as such upon the plat, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use." In *Earll* v. *City of Chicago*, 136 Ill. 285, the above case is quoted with approval and the same doctrine is announced.

In *Lake View* v. *LeBahn*, 120 Ill. 92, where a lot owner filed a bill to enjoin the town from prosecuting him for an alleged obstruction of a strip of land in what was claimed to be a platted street, on the ground that the dedication was invalid, the court directed the dismissal of the bill, and among other things said: "Each block was thus (by the plat and conveyances with reference to it) burdened with the easement of a street upon a strip of land thirty-three feet wide around it, and entitled to the benefit of the easement of a street of like width upon the adjoining side of the opposite block, so far as there was a block opposite, thus making a street sixty-six feet wide around each block. * * * In taking the several blocks of land with the arrangement of this system of streets, there were implied mutual agreements that the streets should ever remain as platted—a dedication to the public use of the ground laid out as a street as effectual as could have been made by deed solemnly executed. * * * He (the adjoining lot owner claiming to the center of the street) took and held an estate upon the condition of its being burdened with the easement of the streets, and the public authorities, in opening and improving the streets, act as for the representatives of the lot owners, with others, in so doing."

*Newell* v. *Sass*, 142 Ill. 104, is also a case in point. There a bill was filed by a lot owner to enjoin the owner of another lot in the same subdivision from obstructing an alley. The

defendant set up, among other things, that complainant was not injured, that she had no right to an injunction, and that there was a remedy at law. In the decision of the case it was among other things said: "Appellants invoked, as against this decree, the rule that equity will only interpose to prevent a threatened nuisance where the injury will be irreparable, where the complainant's right is clear, and where proof of the facts upon which the complainant rests is of the most convincing character. There is here no question as to the character of the act threatened, and complainant's right does not seem to be seriously contested. * * * The execution of the plat under which complainant claims her easement, and the sale of the lots afterwards, in conformity therewith, are clearly proven. Appellants seem, at the time of filing the answer, to have been under the impression that appellee could derive no rights under the plat unless it had been accepted by the city or the public, and hence denied that there had ever been such acceptance. But appellee's right is established by showing that she owns an easement—the right of passage —incident to her ownership of her lot. * * * It is not necessary, in such case, that the easement claimed by the grantee must be really necessary for the enjoyment of the estate granted. It is sufficient if it is highly convenient and beneficial therefor. (*Cihak* v. *Klekr*, 117 Ill. 643.) 'Irreparable injury,' as used in the law of injunction, does not necessarily mean 'that the injury is beyond the possibility of compensation in damages, nor that it must be very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in a case where the nuisance is a continuous one.' (Elliott on Roads and Streets, 497.) * * * And this court has, in harmony with these authorities, held that injunction will lie to prevent obstruction to a private way,

on the ground that the party has no adequate remedy at law. *McCann* v. *Day*, 57 Ill. 101."

The same rule has been adopted in other States. In *Dill* v. *School Board*, 47 N. J. 421, an injunction at the suit of a lot owner was sustained, restraining an obstruction of the light and air from an alley dedicated by plat. In the decision of the case it is said: "The right to have the alley thus described forever preserved as a street is a private right annexed as an appurtenant to the ownership of the land conveyed, and is entirely distinct from and in addition to the rights of the owner, as a citizen at large, to use the street after it should become a public street by acceptance by the public authorities. But while it is a private right, it is, in my judgment, co-extensive with the public right just mentioned, in that it goes the length of requiring that the alley should be preserved, in all respects, as if it were actually a public street." See, also, *Story* v. *New York Elevated Railway Co.* 90 N. Y. 123; *Salisbury* v. *Andrews*, 128 Mass. 336; *Schworer* v. *Boylston Market Ass.* 99 id. 285.

We do not understand that appellees' right to have Holden Place kept free and clear of all obstruction rests on any personal covenant of the appellants, although that expression may be found in some of the cases. But when the original proprietor of the subdivision made the plat, dividing the land into blocks and lots, streets and alleys, and sold and conveyed the lots with reference to that plat, a right arose in favor of the purchasers of lots fronting on Holden Place of having the street forever kept open,—not that it should be kept free from obstruction on the surface of the soil alone, but to the sky. No grant or covenant was required to create this right. The dedication of the street by the plat, the sale of lots with reference to it, conveyance of abutting lots and the payment of the money for the conveyances, were elements sufficient to create the right. The right may be regarded in the nature of an incorporeal hereditament. It becomes appurtenant to the lots.

As to the rights secured, they are plain : to have the street kept open, so that free access may be had to and from the lots abutting on the street, and that light and air may pass unobstructed across the open space between the surface of the street and the sky. Whether this right extends to all the streets in a subdivision, or is confined to streets which afford direct access to or egress from a particular lot, is a question which does not arise in this case. Here appellees' lots front on Holden Place, and the obstruction is placed on the street between appellees' lots and Washington street, at a point affording the only means of access to and from Washington street, from which also light and air are derived.

We have been referred, in the argument, to *McDonald* v. *English,* 85 Ill. 232, and many other cases of that character, holding, as to obstructions in streets not resulting in special injury to the individual, the public only can complain. Under the facts as they appear in *McDonald* v. *English,* we find no fault with the law as laid down in that case, and the same may be said of other similar cases cited by counsel. But in those cases the question presented by the record in this case did not arise. No question arose in regard to the effect of a plat and conveyances in reference to that plat, and the rights and obligations of lot owners who had purchased with reference to streets and alleys appearing on the plat, and no such question was considered or decided.

One other question remains to be considered, and that is, whether the erection of the proposed structure will result in special damage to appellee's property different in character from that sustained by the public at large. The proposed bridge or structure, as has been seen, was to be built from a point eighteen feet above the surface of the alley, fifty-five feet high and forty-five feet wide, extending from the north line of Washington street to within seventy-five feet of the south line of appellees' building. The character of the structure, as disclosed in the answer, is as follows : "It will be built of steel,

supported by steel and cast-iron columns of the old and new buildings. The columns in both buildings, the steel girders, and the steel beams in all floors, will be fire-proofed with hard-burned fire-clay. The north and south walls will be of terra cotta, and the roof covered with three-inch book-tile of fire-clay. The roof will be framed heavily, like a floor, and the fire-clay supported on 'T' irons, on eighteen-inch centers. The windows on the north side will be protected with rolling steel shutters. Each wall on each story will be practically a continuous window, so as to intercept light as little as possible."

In view of the size and character of the structure erected over the entire street, a main entrance to appellee's property for the transaction of business, and so near the property, it would seem that much additional evidence could not be required to establish that appellees would sustain special damages. But evidence was introduced tending to prove that the obstruction would seriously interfere with the light and the circulation of air at appellees' building. R. W. Hyman, a real estate agent in Chicago, of many years' experience, who was well acquainted with this property, testified that the erection of the structure would materially diminish the amount of air and light passing into said alley, and of the light and air derived by complainants' said building from said alley, and would darken and impede the approach to said building from Washington street by way of said alley, and in different ways would prevent the public from entering said alley as a means of access to said building from Washington street; that the erection and maintenance of such a structure will, in affiant's opinion, materially damage said complainant's property, and materially diminish its rental and other value, and that the damage to said property, and its value, will be continuous, and of such a character that it is not practicable to estimate the amount of the same with accuracy. Other evidence of a similar character was introduced, and on the other hand there was evidence that appellees' property would not

be damaged, but would be benefited. But from an examination of all the evidence we are satisfied that the erection of the structure would result in serious damage to appellees' property, different in character from that sustained by the public.

In the bill of complaint it was alleged that appellants intended to construct a certain bridge or passageway connecting the old and new buildings, which was described according to the information then in the possession of the appellees. The answer of appellants admitted the intention to build the proposed bridge or passageway for the purpose alleged, and described in detail the particular structure proposed to be built, giving the location, the height, width and other dimensions of the proposed structure, but denied appellees' right to an injunction. The court, on the hearing, rendered a decree enjoining appellants from constructing any bridge across Holden Place, and it is claimed the decree should have been confined to the particular kind of a bridge described in the answer. The object of the bill was to prevent the threatened injury, and a decree confined to a bridge or passageway of some particular description or dimensions might have opened the door to litigate this whole controversy over again, by an attempt on the part of appellants to construct a bridge a foot narrower or two feet lower, or varying slightly in some other respect from the bridge first contemplated. If, under the facts presented by the record, appellees were entitled to an injunction to prevent the threatened obstruction, as we think they were, it was the duty of the court to render a decree which would settle the controversy, and we think the decree rendered was the proper one, and it will be affirmed.

*Decree affirmed.*