## Franklin H. Martin v. George H. Cleveland.
### Gen. No. 11,622.

1. INJUNCTION—*when lies to restrain selling, etc., publication.* Where a publisher agrees, among other things, to print, publish and bind a book in first-class style, but, in fact, produces and undertakes to distribute a work inferior in print, and in the paper and binding used, which was likely to subject the author to ridi-

Martin v. Cleveland.

cule and injury, an injunction will be. granted to restrain the sell-
ing or the giving away of such work.

2.  INJUNCTION—*when lies for inadequacy of legal remedy.*  An
injunction lies to restrain the commission of a wrong which could
not be adequately compensated for by the judgment of a court
of law.

BAKER, P. J., dissenting.

Bill for injunction.  Appeal from the Superior Court of Cook
County; the Hon. JESSE HOLDOM, Judge, presiding.  Heard in the
Branch Appellate Court at the March term, 1904.  Reversed and
remanded.  Opinion filed April 5, 1905.

**Statement by the Court.**  Appellant filed his bill in the
Superior Court of Cook county, alleging that he is a phy-
sician and surgeon in practice in the City of Chicago, and
for a number of years he has made a specialty of operative
gynecology; that for many years he has been secretary of the
medical faculty of the Post-Graduate School of Chicago, and
as such has lectured on the subject of Gynecology before a
large number of medical practitioners throughout the west-
ern states, who have attended said Post-Graduate Medical
school for post-graduate instruction, and that he has given
clinics before said students and other students of medicine
and several institutions in the City of Chicago; that his ex-
perience has been such as to render probable a demand for
any literary production from him on that subject.

That early in 1903 George H. Cleveland, doing business
under the name of the "Cleveland Press," desired to pub-
lish in book form a series of lectures about to be delivered
by appellant at said school on said subject, and it was
agreed between appellant and said Cleveland that the latter
should produce said lectures in book form, using finished
paper, and the volumes to be thoroughly well bound; that
appellant was to furnish manuscript and drawings, and
appellee was to make the necessary plates and furnish all
the materials for the production of a first-class book, the
sale of which was to be in the hands of appellee.  That it
was subsequently agreed between the parties that a text book
covering the entire field of Gynecology should be prepared,

appellant undertaking to furnish manuscript and drawings and appellee to make the necessary plates and furnish the materials necessary for the issuance of a first-class text book in every respect; that it was expressly stated by appellee that the book to be printed by him should, in respect of workmanship, compare favorably with the text book of Howard A. Kelly, M. D., on Operative Gynecology; that appellee should print, bind and offer for sale and extensively advertise an edition of two thousand copies thereof and report quarterly to appellant the sales of said book; that appellant was to receive no royalty on the first edition of two thousand volumes, but in lieu of royalty was to receive a certain number of copies of said book, and after the edition of two thousand volumes had been printed the interest of appellee in said book was to cease.     That in pursuance of the agreement appellant furnished appellee with the necessary manuscript and drawings; that appellee had plates made from the drawings and caused the manuscript to be set to type and printed and caused announcement of the forthcoming publication to be extensively made in various medical journals, and appellant with the knowledge and consent of appellee caused to be printed 10,000 copies of a certain chapter of said book, with illustrations thereof, which were distributed at appellant's expense among practicing physicians and surgeons in this and other states, on the back of which was printed the advertisement of appellee, and upon information and belief it is averred that by means of said instrument a large number of orders for said book have been received at the sum of five dollars per copy.

That on November 10, 1903, a copy of said text book entitled "A Treatise on Gynecology" was delivered at appellant's office by appellee; that said book is printed on inferior paper from inferior type; that a very low grade of ink was used; that the plates made from the drawings prepared under appellant's direction at an expense to him of nearly $1,000 are inferior in every respect; that the binding is crude and inferior in every respect; that the workmanship as a whole is inferior to Kelly's book; that ap-

pellee has already delivered a number of said books to persons who ordered them, and is about to deliver others and to send copies to book reviewers; that the mechanical crudeness of the book will excite unfavorable criticism and subject appellant to ridicule and prevent the successful marketing of the book; that appellant is frequently called into consultation in special cases by physicians and surgeons residing and practicing in other cities; that such persons will be the first to procure copies of said book, and finding themselves grievously defrauded by appellee's misrepresentations, will conceive a hostility towards appellant, fairly supposing him to be responsible for foisting so crude a production upon the profession; that those who have ordered or may order said work, under the impression that it is printed and bound in first-class manner, according to appellee's advertisements, will refrain from calling appellant into consultation, to his great loss and injury, to remedy which the law furnishes an inadequate remedy; that appellant has expended $1,500 in the preparation of said book and drawings and great labor extending over a period of ten months and the only compensation he was to receive from appellee in exchange for permission to publish and sell 2,000 copies of the book was, that appellee should issue a book first-class in every respect and extensively advertise it so as to create a demand therefor, whereby appellant might sell subsequent editions, at large profit to himself.

That appellee without appellant's consent procured a copyright of said book in his own name.

The bill prays that appellee and his associates in business, if any, and the Cleveland Press and their agents may be enjoined from selling, giving away, etc., to any person or corporation any copy of the book, and from issuing any advertisement of the same, and that appellee may be compelled to return to persons who have already purchased said volumes the several amounts paid by them therefor, and so far as possible secure from them the return of said book; that appellee be directed to turn over to appellant all the

plates, electrotypes, drawings, etc., used in said publication and be decreed to assign to appellant the copyright, and for general relief.

The answer of appellee admits the contract substantially as set forth in the bill, except as to the paper to be used and that the book was to compare favorably with Kelly's book; denies that the book is printed on inferior paper, or from inferior type, or that a low grade of ink was used, and that the plates are of inferior character and are printed on inferior paper and that the binding of the book is in any way crude and inferior. It alleges that the book is printed and bound in first-class manner and compares favorably with books in general published for sale to the medical profession; denies that the mechanical part of the book will excite unfavorable criticism or subject appellant to ridicule or prevent the successful marketing of the book, or that any hostility toward appellant will be excited by reason of the manner and form of its publication.

The answer denies that appellee procured a copyright without appellant's knowledge and consent, and states that it was procured with his consent and is to be assigned to appellant when appellee's rights in the subject-matter were at an end, and disclaims permanent title thereto. The answer alleges appellee has performed his part of the contract and that the publication of the book will not injure appellant's professional reputation, and denies appellant is entitled to any relief.

A preliminary injunction was granted restraining the sale of the book, which was dissolved on the hearing. A part only of the relief prayed in the bill was granted in the final decree, but appellee was not by the decree prohibited from selling or distributing the edition published; and appellant prosecutes this appeal. Appellee also assigns errors.

FRANK CROZIER, for appellant.

WILLIAM G. WISE and FRANK P. SCHMITT, JR., for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The terms of the contract between the parties set out in the bill are admitted by the answer, with the exception of the provision that in the matter of workmanship the book to be printed was to compare favorably with the text book of Howard A. Kelly, M. D., on Operative Gynecology. Upon this provision of the contract the testimony of appellant is fully corroborated by the testimony of Margaret L. Bowen, who during the time of the preparation of the book in question was secretary of appellant. We think, therefore, that the preponderance of the evidence on this disputed provision of the contract is with appellant. The contract itself is established by the evidence and is free from doubt.

The evidence in the record, in our opinion, shows clearly that the book in material and workmanship and binding falls far short of being first-class in every respect. The book is printed on inferior paper, from inferior type, and with a low grade of ink, and the plates are inferior in many respects, and are printed on inferior paper; and that the binding of the book is poor and unsubstantial. The letter press work is of poor grade for book work. The imposition of the printed page is wrong, the margins varying in width and the smaller margins generally appear on the outside of the page when they should be on the inside of the page. The color of the pages varies, some of the pages being black and some light. The type used is evidently old and worn. The book does not compare favorably with the Kelly book in any of the foregoing particulars.

The breach of the contract by appellee appears to us to be established by the evidence. According to the defendant's answer, the book was to be printed and published in first-class form. This was not done. The true intent and meaning of the contract was not carried out by appellee. To permit appellee to sell the publication to the profession would be to allow him to carry out a wrong upon appellant for which appellant would have no plain and adequate remedy at law. Upon this state of facts it would be inequitable

to refuse, in our opinion, the remedy by injunction which equity affords.

It is obvious that a suit at law would be wholly unavailing to appellant. The actual damages which he would suffer, if appellee be permitted to sell and dispose of the book in its present form, would be difficult, if not wholly impossible, to measure.

In Field et al. v. Barling et al., 149 Ill. 556, the court said: "Irreparable injury as used in the law of injunction does not mean that the injury is beyond the possibility of compensation in damages, nor that it is very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere."

In Wood on Nuisances it is said: "By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor necessarily great injury or great damages, but that species of injury, whether great or small, that ought not to be submitted to on the one hand, or inflicted on the other."

This is quoted with approval in Wahle v. Reinbach, 76 Ill. 326.

It will not do to say that appellant may have compensation in damages if we grant that he could, for, "if it might be done, there would be delay in compensation subjecting the plaintiff (appellant) to discomfort, inconvenience and loss for probably a protracted period. Equity will not permit one to be deprived of his rights in this way by the violation of a contract, but by injunction will interfere to prevent it." Graves v. Key City Gas Co. (Iowa Supreme Court), 50 N. W. Rep. 283, and in Kerr on Injunctions, Chap. X, it is said: "A court of equity will not suffer men to depart from their agreements at their pleasure, leaving the party with whom they have contracted to the mere chance of damages which a jury may give."

The decree in this case is nearly as faulty as the publication with which it deals. There is no foundation either

in the averments of the bill or in the evidence, for the finding in the decree that the defendant was granted .the exclusive right to publish the treatise in question for a period of one year from the day of the first publication of the book. Nor is there any averment or proof upon which to restrain appellee from printing, selling, etc., any more copies of the treatise than the two thousand copies mentioned in the bill. In these respects, at least, the decree goes outside of the record. Counsel who drafted the decree seems to have forgotten that a decree not founded upon averments and proofs cannot stand. For these errors, the decree would have been reversed on appeal, if it had granted to appellant all the relief asked for in the bill.

In our opinion appellee should have been restrained from selling, giving away, etc., the treatise in question as prayed for in the bill.

For the errors indicated, the decree is reversed and the cause is remanded with directions to enter a decree according to the prayer of the bill.

*Reversed and remanded, with directions.*

MR. PRESIDING JUSTICE BAKER dissenting.