Price, J.
As a suitable epitome of the verbal diagram of the premises involved herein, which is attempted in the foregoing statement of this case, we observe they have a frontage of ninety-five feet on the west side of Dille street and a depth of about one hundred and fifty feet. The Dille road was forty feet in width and that is its width as Dille street, which, before the changes made by the defendants, was one of the principal thoroughfares of the village of Nottingham. On the north side of the plaintiffs’ premises is South Depot *364 street, which extends east and west a short distance beyond the end of their lot, and then it curves to the south into St. Clair road, which runs east and west in the village, crossing Dille street at right angles two hundred and fifty to two hundred and seventy-five feet south of plaintiffs’ premises.
The railroad runs east and west, and, before the change, crossed Dille street north of plaintiffs’ property the width of South Depot street. This grade crossing was vacated by the council and the crossing closed up so that all travel by vehicles has now to pass through the subway, which, in front of plaintiffs’ property, is about fourteen feet below the surface, and the concrete wall and the iron fence thereon make a complete barrier between the unvacated part of Dille street and the .subway. One coming from north of the railroad in vehicles, desiring to reach plaintiffs’ place of business, must pass through the subway to St. Clair road, and then turn and go north on the unvacated part of Dille street two hundred and fifty to two hundred and seventy-five feet. The evidence tends to show that after the railroad company purchased the business properties opposite the plaintiffs on the east side of Dille street and constructed the subway, the business of the village gathered on St. Clair road and the plaintiffs’ locality for business was practically abandoned, and that the business formerly conducted there declined and had to be discontinued, and that the real estate which was formerly worth $10,000 to $11,000, by reason of the subway, has been reduced in value several thousand dollars. *365 It is claimed that while it formerly was the most prominent corner in the business section of the village, it has been left in a cul de sac and away from the line of travel.
The evidence tends to show that plaintiffs sought to have an allowance of damages by the council in the proceedings to vacate the road or street, but none was made.
Does the law afford a remedy? The interest in a public street which the owner of an abutting lot may have, has been involved and discussed in several cases decided by this court, commencing with Goodloe v. Cincinnati and Smith v. Cincinnati, 4 Ohio Rep., 500-514. In those cases it was charged that the city by its agents acted illegally and maliciously in changing the grade of the street to the damage of the lot owner. It was contended by the city that if anyone was liable, it was the agent or servant and not the corporation. The court held: “When the corporation of a town grades the streets, the object is the benefit of the whole town. If an individual is injured it is right he should have redress against all upon whose account the injury was perpetrated. There is no justice in sending him to seek redress from an irresponsible agent. There is no propriety in compelling the injured party to look for compensation to the mere agent, who acted in good faith, according to the direction of his employers * * Recovery was had in both cases.
In Scovill v. Geddings, 7 Ohio (part 2), 211, officers and agents of the town were sued for damages done the lot owner by changing the grade under orders of the trustees of the town. It was *366 held that these officers were not liable and the remedy was against the corporation.
In Hickox v. Cleveland, 8 Ohio Rep., 544, it was held that the corporation of a town acting under an act of the legislature authorizing the grading of a street and providing a mode of assessing damages and compensating adjacent proprietors, was not liable for an act done in the legal execution of the duties prescribed.
In Rhodes v. Cleveland, 10 Ohio Rep., 160, the court took an advanced step from the holdings in the former cases, and decided that “corporations are liable like individuals for injuries done, although the act was not beyond their lawful powers.” In the opinion by Lane, C. J., after reviewing the earlier cases above cited, it is said: “Upon the whole, then, we believe that justice and good morals require that a corporation should repair a consequential injury which ensues from the exercise of its functions, and that if we go further than adjudicated cases have yet gone, we do not transcend the line to which we are conducted by acknowledged principles. We hold, therefore, that corporations are liable like individuals for injuries done, although the act was not beyond their lawful powers.”
In McCombs v. Town Council of Akron, 15 Ohio Rep., 475, the court had again under consideration the liability of the corporation for change in grade of a street. The principle announced in Rhodes v. Cleveland, supra, was reasserted in the following headnote: “A municipal corporation, like .an individual, is liable for injuries resulting to the property of others from the acts of such corporation, though acting within the scope of its corpo *367 rate authority, and without any circumstances of negligence or malice.” The latter clause is a growth on the former doctrine and shows progress in the development of the original question.
That was an action for cutting down a street, and plaintiff’s counsel asked the court to charge the jury that, “if the plaintiff’s property had sustained a real and substantial injury by reason of defendant’s act in grading the street, that the plaintiff might recover, even though the corporate authorities acted strictly within their legal authority and without any intent to injure the plaintiff’s property.” The court refused to so charge, and this was the error assigned. This court, as then constituted, reversed the judgment of the lower court, for error in refusing the charge requested, and remanded the case. In the opinion of the court, by Read, J., Rhodes v. Clevelandsupra, is referred to with approval, and endorses the heroic assertion of Lane, C. J.: “If an individual, exercising his lawful powers, commit an injury, the action on the case is the familiar remedy. If a corporation, acting within the scope of its authority, should work wrong to another, the same principle of ethics demands of them to repair it,, and no reason occurs to the court why the same remedy should not be applied to compel justice from them.”
Having thus quoted, the court proceeds to say, in the McCombs case: “We recognize the doctrine of that case (Rhodes v. Cleveland) as laid down by this court, as founded in the most solid reason, right and morals, and a majority of the court have not the slightest disposition to impair its obliga *368 tion, but by the light of such example and assurance, hope the whole subject-matter of corporations will, in the end, be reduced to the control of incontestable principle.”
There is another reason, says the court: “If a municipal corporation, for the good of all within its limits, see proper to cut down a street, it is nothing more than right that an injury there done to a single individual should be shared by all.”
The case having been again tried, the proceedings in the second trial, wherein the lot owner recovered, are reviewed in Town Council of Akron v. McComb, 18 Ohio Rep., 229. Avery, J., states the case in the opening of his opinion as follows: “The plaintiff in the action was the owner of a lot in Akron upon which he had erected a brick house and had fitted it up for the purpose of merchandising. He had made his improvements with an express view to the level and grade of Howard street, adjoining which the building stood: After he had made his improvements, the town council caused the ground in front of his building to be excavated, and the street to be sunk several feet, in consequence of which the value of his house and lot was greatly impaired.”'
The difference between that case and the one at bar, is that in the former we assume that the entire street was sunk, • while in the present case only a few feet were taken, of which we will speak more fully hereafter.
The judgment of the lower court was affirmed, the court adhering to the doctrine of Rhodes v. Cleveland, supra, and cites authorities from other states which were also considered.
*369 We again hear of the same question in Crawford v. Village of Delaware, 7 Ohio St., 459, in which our prior cases are noted and the law laid down in Rhodes v. Cleveland, supra, and Akron v. McComb, supra, is approved. For the first time in the chain of Ohio cases, we have in the Crawford v. Delaware case, distinct definition of the interest an abutting lot-owner has in the street. As a basis for a proper application of the law to the instant case, we think a restatement of the definition is in order. On page 469, the court say: “Distinct from the right of the public to use a street, is the right and interest of the owners of lots adjacent. The latter have a peculiar interest in the street, which neither the local nor the general public can pretend to claim: a private right of the nature of an incorporeal hereditament, legally attached to their contiguous grounds and the erections thereon; an incidental title to certain facilities and franchises, assured to them by contracts and by law, and without which their property would be comparatively of little value. This easement, append-ant to the lots, unlike any right of one lot-owner in the lot of another, is as much property as the lot itself.”
In connection with this announcement the court quotes approvingly the language of Lane, C. J., in Bigham v. Doane, 9 Ohio Rep., 167, concerning a highway, to-wit: “Its existence generally contributes to the enjoyment of the adjacent lot, and confers additional value upon it, and any act of another, which impairs that value, or interferes with that enjoyment, may be the subject of a suit. * * * The easement — the privilege of the *370 road — the advantage it confers on the land is his, but not the road itself. The right lies not in livery, but in grant.”
And applying the principle so announced, the court says on page 470: “We hold that when the avenue to the place of business of the lot-owner, and the use of the streét as an incident to his permanent erections, is thus blocked up or taken from him, after the establishment, and by the alteration of a grade, the private rights of- the owner, inherent in and incident to the erections upon the lot, are invaded, and no curt phrase like damnum absque injuria, can conceal the invasion or substantial injury. It is as positive and substantial an injury to private property, and as direct an invasion of private right incident to a lot, as if the erections upon the lot were taken for public use. It comes not within the letter but manifestly within the spirit of the provision of the constitution which requires compensation for property taken for public use.” There can be. no doubt about the meaning of the language quoted.
The latter case, as to our subject, was approved in Cin. & Spring Grove Ave. St. Ry. Co. v. Village of Cumminsville, 14 Ohio St., 523.
It is sufficient that we state here the principles of the 4th, 5th and 6th paragraphs of the syllabus. The 4th is: “ — the legislature may authorize the occupation of the easement, originally acquired by grant or appropriation, in any manner calculated to further the general objects of the acquisition; but may not divert it to purposes which exclude the original uses, or lay additional burdens upon the *371 land, or desfroy or impair the incidental easements of adjoining lot-owners in the street or highway.” It is declared in the 5thj that the “interest of an adjoining lot-owner is property protected by the constitution, and subject to be taken or appropriated only upon the condition that compensation be made.”
In order to leave no doubt about the extent of the lot-owner’s rights, it is said in the 6th paragraph that, “when the public authorities have taken possession of a street or highway, and regularly defined the interests and improvements necessary for the use by establishing grades, etc., lot owners have the right to make their improvements in reference thereto, and no subsequent change, which obstructs or impairs access to such improvements' can be lawfully made without compensating for the injury.”
We pause here to ask, did not the closing and vacating of Dille street at the grade crossing and the creation of the subway and concrete fence on top of the concrete wall impair the incidental easement of the plaintiffs as lot owners? Did the new exclude or impair the old use, or lay additional burdens upon the use of the easement and therefore on the adjoining lot? Did the change in the street impair access to plaintiffs’ improvements — not their own access necessarily, but having business structures there — access by people accustomed to trade and transact business with plaintiffs? — for all this the evidence in this record tends to prove.
Or did the change in the street affect the avenue to the place of business of the plaintiffs, and their *372 use of the street as incident to erections on their lot, as phrased by the court in Crawford v. Delaware, supra, 470? Did the plaintiffs sustain direct'consequential injury to their real estate as improved to former grade by the acts of the defendants ? The evidence tends to show that they have sustained such injury. If so, where is the escape from the operation of the rules so clearly settled by the Ohio cases referred to?
In Railway v. Lawrence, 38 Ohio St., 41, this court held that, “where the construction of a railroad in a street of a city will work material injury to the abutting property, such construction may be enjoined, at the suit of the owners, until the right to construct such road in the street shall be first acquired under proceedings instituted against such owners as required by law for the appropriation of private property.” And it is there said that in such case it is not material whether the fee is vested in the city or abutting lot owners.
It seems that defendants rely largely on the fact that they did not depress Dille street immediately in front of plaintiffs premises. That is true, speaking literally; but they constructed what is to plaintiffs an insurmountable barrier on 3.75 ’feet on the east side of the street opposite their lot and along that strip from St. Clair road to the north side of the railway right of way, except the stairway for pedestrians going down into the subway from near South Depot street. The plaintiffs easement and property in Dille street extended the full width of the forty feet, and extended north and south of the front of their lot as well.
*373 What is a street? It does not consist of that part only which exists in front of the plaintiff’s lot. To be a public street or highway, it is essential that it pass in front of more than the lot owned by the plaintiffs. If defendants had closed Dille street at St. Clair road and left it open thence to South Depot street, and closed it there, could it be correctly said they had not closed the street in front of plaintiff’s lot, 'which is between those streets? We think not. The acts done, as we have recited them, make an obstruction — a change of grade — a vacation, differing only in degree, from a change of grade in the entire street.
However, we are told that this case is ruled by Kinnear Mfg. Co. v. Beatty, 65 Ohio St., 264. We do not so understand it.
In that case, Mrs. Beatty brought suit to enjoin the erection of a certain building by the Kinnear Manufacturing Company upon the vacated portion of a certain alley at the rear end of her lot in Columbus. This alley extended from Hamlet street on the west to Fourth street on the east. In the statement of that case appears a map of the said streets and alley which clearly shows the location. Her residence fronted on Warren street. The city authorities had by • appropriate proceedings vacated that portion of the alley which extended east from her lot, but did not vacate that part on which her lot abutted. The court was called upon to decide as to what became of the vacated portion, and it decided that it reverted to the abutting lot owners, subject to such rights as other property owners on the alley might have therein as a means of access to their property.
*374 It will be observed, also, that while vacating the east, part of the alley, the city opened an alley fifteen feet wide along the entire length of her lot to Warren street, upon which her residence fronted. She had the old alley from the west to and along the rear of her lot and the new fifteen-foot alley its entire length to Warren street, and of course that street was open and improved. Therefore she had better means of access to her lot —surely no worse — than she had before vacation. Moreover, there was no chang-e of grades or excavation to inflict any inconvenience or injury. The situation of Mrs. Beatty’s property after the vacation was not such as to justify an injunction against erection of a building partly on the portion of alley vacated. And the court state in the second section of the syllabus that, “to entitle a party to any relief in such cases, the inconvenience he suffers must differ in kind from that of the general public.” And as she had reasonable access to her property by other streets and alleys, the court declined to enjoin.
The case. here differs widely from that. It is not an action to enjoin the carrying out of the purposes of vacating part of Dille street, in' order to effectuate the elimination of- a grade crossing, which is a commendable purpose and beneficial to the public — but it is an action for damages for the-depreciation of individual property caused directly by the defendants in eliminating the grade crossing — real and substantial consequential damages which plaintiffs sustained, differing in kind from those, if any, sustained by the general public.
*375 We have a case better fitted to the facts before us, in Cohen v. Cleveland, 43 Ohio St., 190 — a case prior in date to the case of Kinnear Mfg. Col v. Beatty, sitpra, but it was not overruled or modified by the latter decision. In the Cohen case, a viaduct was constructed sixty-four feet wide, with a level roadway across the Cuyahoga river, covering a part of Superior street, about thirty-seven feet being over the strip opposite Cohen’s premises, and the balance over the street, so that in effect, Superior street, which was ninety-three feet wide, was reduced in width between Water street and the river, and opposite Cohen’s premises to sixty-six feet. The elevation of the roadway of the viaduct above Superior street gradually increases from Water street to the river, and opposite the premises of Cohen, on the north side of Superior street the elevation is forty-five feet. His lot did not abut on the viaduct, and the street below was still open in front of the premises. In his suit for damages, he alleged that the viaduct diverted travel from that part of Superior street, impaired the light and air to his premises, caused noises and jarring of his house day and night, and impaired the value of his property and reduced its rental value. The plaintiff at the trial 'gave evidence tending to show that, he was entitled to a verdict; but it appearing that he had filed no claim for damages in accordance with the municipal code, the court so instructed the jury that it found against the plaintiff. Judgment on the verdict was affirmed by the district court.
This court held Cohen was entitled to recover, and reversed the judgments of the lower courts. *376 It is announced in the syllabus and opinion that the viaduct was a lawful structure, and that on the facts and proof of his injury Cohen was entitled to damages.
In the opinion, on page 193, it is said: “He is not entitled to compensation under the letter of the constitution, article I, section 19, but may be entitled to such compensation in analogy to that provision. Injuries resulting from the change of established grades in streets, though made in accordance with the statute, and without negligence or malice, and other injuries of a kindred character, have been held to afford' ground for the recovery of damages against municipal corporations.” The court then considers the earlier Ohio cases we have cited and strongly approves them.'
The court further remark concerning the viaduct that it “has furnished a new route of travel, and has largely diverted it from that part of Superior street.” The street was still in existence in front of Cohen’s premises, but it is forty-five feet below the viaduct — the newly traveled way. So it appears that the making the viaduct which diverted the travel from the street below was the gravamen of his complaint.
In the case at bar, the defendants left the plaintiffs’ lot and buildings high above the new highway, and it is alleged and the evidence tends to prove, that the new way has diverted travel from their premises and caused the business of the village to center elsewhere. The evidence shows that because of the concrete wall and fence on the west side of the subway, the plaintiffs could not, by *377 making a sub-story to their buildings, get access into the subway.
A case very much in point is found in Chicago v. Burcky, 158 Ill., 103, where it is held that “the vacation of part of a street constituting a thoroughfare across railroad tracks, and the erection of a viaduct in another place, damage a land owner whose property is thereby left upon a blind court in a manner different from the general pub^ lie, and entitle him to damages, although his property only touched the vacated portion at one corner.” Many cases are cited in the opinion. Worthy of attention as valuable authorities are Field et al. v. Barling et al., 149 Ill., 556, and Stetson v. Faxon, 19 Pick., 147.
We think the case at bar is largely controlled by Cohen v. Cleveland, supra, as a reading of the entire case will demonstrate.
The courts below erred in denying relief to the plaintiffs and their judgments are reversed and the cause remanded to the court of common pleas for further proceedings according to law.

Reversed.

Spear, C. J., Johnson and Donahue, JJ., concur.