THE PEOPLE *ex rel.* Albert Kocourek

*v.*

THE CITY OF CHICAGO AND MARSHALL FIELD.

*Opinion filed December 18, 1901.*

This case is controlled by the decision in *People ex rel.* v. *City of Chicago and Schlesinger & Mayer,* (*ante,* p. 507.)

MAGRUDER, J., dissenting.

ORIGINAL petition for *mandamus.*

L. P. WILCOX, for relator.

CHARLES M. WALKER, Corporation Counsel, for respondent the city of Chicago.

WILSON, MOORE & MCILVAINE, for respondents Marshall Field and Marshall Field & Co.

Per CURIAM: This is a petition for a writ of *mandamus,* filed in this court to compel the city of Chicago to remove a certain structure or bridge erected over and across a certain public alley in that city by the defendant Marshall Field & Co., a corporation, to connect the buildings of said Marshall Field & Co. situated on each side of said alley and used as a single mercantile establishment. The case is the same in all substantial respects as that of *People ex rel.* v. *City of Chicago and Schlesinger & Mayer,* (*ante,* p. 507,) and must be disposed of in the same way, and the petition denied for the reasons expressed in the opinion filed in the latter case.

*Petition dismissed.*

Mr. JUSTICE MAGRUDER, dissenting:

I do not agree with the majority of the court in regard to this case, and, owing to its great importance, I deem it my duty to place on record all the facts, and my views. The facts are as follows:

This is an original petition for *mandamus,* filed in this court on the 8th day of February, 1901, by the People,

upon the relation of Albert Kocourek, against the city of Chicago for the purpose of compelling the city, or the city authorities, to remove a certain bridge, building or superstructure constructed in an alley in the city, known as "Holden place," and running north and south in the block bounded on the south by Washington street, on the east by Wabash avenue, on the north by Randolph street, and on the west by State street.

The petition alleges that the block bounded as above stated is known as block 13 of Fort Dearborn addition to Chicago, and that the land embraced therein, when originally platted, belonged to the United States, and that the plat of Fort Dearborn addition was executed and recorded in June, 1839. The petition then sets forth and describes the original survey of the ground, which included said block 13, and the plat of a subdivision thereof into streets, alleys, lots, blocks, commons and public grounds, as made, certified, acknowledged and recorded by the United States through the Secretary of War, or his agent; and also the sale by the United States of the lots numbered from 1 to 16 inclusive contained in said block 13 in accordance with said plat and with reference to the streets and alleys designated thereon. The petition also alleges that the United States thereby dedicated to the public use, as an alley, the strip of land forty feet in width, extending from Randolph street in the city of Chicago south through said block to Washington street, said alley forty feet wide being known and designated as "Holden place" or "Holden court." The petition then sets forth the manner, in which subsequent subdivisions and re-subdivisions of the lots in said block 13 were made, and in which subsequent owners thereof acquired their titles. The petition furthermore alleges that Marshall Field was, at the time of the filing of it, the owner of lots 9, 10 and 11 of said block 13 lying upon the west side of said alley or court, and also of lots 1, 2, 3, 4, 5 and 6 of the assessor's re-subdivision of lots 6, 7 and 8

and the south one-half of lot 5 in said block lying upon the east side of said alley or court; that there is erected upon the lots lying upon the east side of said alley a building nine stories in height, designated, for the purpose of distinguishing it, as the "new building;" that the lower five stories of said "new building" are occupied and used as a part of the retail store of the co-partnership of Marshall Field & Co.; that there is erected upon the lots, lying upon the west side of said alley, a building eight stories high, designated, for the purpose of distinguishing it, as the "old building;" that all the stories of said "old building" are occupied and used as a part of the retail store of Marshall Field & Co.; that the "old building" faces upon State street and extends east along Washington street to Holden place; that the "new building" extends west from Wabash avenue along Washington street to Holden place. The petition avers that the said alley or court, forty feet wide, known as "Holden place," has been from June 7, A. D. 1839, down to and including the present time, accepted, worked and improved by the public as a public street or alley at public expense, and has been used and occupied as a public street or alley by the public; and that the said Marshall Field obtained title to his lots, subject to all the rights of the public, which attached to said Holden place as a public alley.

The petition also avers that, on the 6th day of June, 1892, and, at all times since that date, it was and is provided by the statutes of Illinois that it is a public nuisance "to obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places, and ways to burying places;" (1 Starr & Curt. Ann. Stat. —2d ed.—p. 1333); that, by the charter of the respondent, the city of Chicago, it is provided that the city council shall have the power to prevent and remove encroachments or obstructions upon public streets; that on June 6, 1892, and at all times since, it has been provided by the ordinances of said city that the owner of any building

or other obstruction standing, or which may be erected or placed upon any street, alley, or sidewalk, or public ground, within the city, shall remove the same within such reasonable time, not exceeding thirty or less than three days, as he shall be required to do by a notice in writing signed by the commissioner of public works, under a penalty of not less than $25.00 or more than $100.00, and a further penalty of $10.00 for every day the same shall so remain; that, whenever the owner of any building or other obstruction upon any of such streets, alleys, sidewalks or public grounds shall refuse or neglect to remove the same after notice, etc., the same shall be deemed a nuisance; that it shall be the duty of the commissioner of public works, subject to the ordinances of the city, to take charge of and superintend all streets, alleys, lanes and highways in the city; that said commissioner is authorized to order any article or thing whatsoever, which may obstruct any street or alley, to be removed; if the same shall not be removed within six hours after notice to the owner or person in charge thereof, to remove the same; or if the owner cannot readily be found, he shall cause the same to be removed to some suitable place designated by the commissioner.

The petition further alleges that the city of Chicago holds all lands located therein, dedicated to public use as streets and alleys, in trust for public use, and is by the law bound to maintain such public streets and alleys for the uses and purposes for which they were so dedicated, and to prevent their conversion to any other use; that the city council of said city, contrary to its duty and in violation of the obligation of the public trust devolving upon it, did, on June 6, 1892, pass an ordinance as follows:

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. That permission and authority be and is hereby given to John M. Pashley and his assigns to construct and use a bridge or covered passageway across

the alley running between lots 9, 10, and 11 on one side, and lot 6 in assessor's subdivision of lots 6, 7 and 8, etc., on the other, all in block 13, Fort Dearborn addition to Chicago, provided the lowest portion of said bridge or passageway shall not be lower than eighteen feet above grade of alley, and shall be so constructed that free and unobstructed passageway may be had under the same, and provided that said bridge or passageway shall be constructed of incombustible material, and to the satisfaction of the commissioner of buildings.

"Sec. 2. That said John M. Pashley and his assigns and lessees, and any and all persons who shall occupy the buildings, which said bridge is to connect, shall indemnify and save harmless, the city of Chicago of and from all damages of every kind, for which it may become liable for or by reason of the passageway hereby granted, and said John M. Pashley shall before extending said bridge or passageway file with the department of public works his acceptance of the conditions herein contained, provided said bridge or passageway be used exclusively as a passageway between said buildings, and that no goods shall be stored or sold in said passageway.

"Sec. 3. This ordinance shall be in force from and after its passage."

The petition then avers that the city of Chicago had no power to pass said ordinance, and that the permission granted thereby was and is an illegal abuse of the public trust and duty devolving upon the city to maintain public streets, alleys and thoroughfares, dedicated for such use to the public, for the uses for which they were so dedicated; and that the ordinance in question purported to, and was intended to, confer upon the said Pashley and his assigns the right to occupy said public alley, known as "Holden place," for their sole and private use and benefit, to the exclusion of the public from the full use and enjoyment of that part of Holden place, situated in said block 13, as a public alley, in the manner it had

been from the time of its dedication as a public alley by the United States of America down to the time of the passage of said ordinance; that said Pashley did not, at the time of the passage of said ordinance, or at any other time, own or have any property interest in said block 13, but was a carpenter in the employ of said co-partnership of Marshall Field & Co.; and that the said Marshall Field is the assignee of the pretended rights and permission conferred by said ordinance upon said Pashley.

The petition further alleges that said Pashley, on June 14, 1892, executed in writing an acceptance of said ordinance in the words and figures.following, to-wit:

CHICAGO, ILL., *June 14, 1892.*
"*Hon. J. Frank Aldrich, Commissioner of Public Works:*

"DEAR SIR—I hereby accept the conditions contained in a certain ordinance passed by the city council of Chicago, June 6, 1892, granting unto myself and assigns permission and authority to construct and use a bridge or covered passageway across the alley running between lots 9, 10 and 11 on one side, and lots 6, 7, 8, etc., on the other, all in block 13, Fort Dearborn addition to Chicago.

"Witness my hand this .14th day of June, A. D. 1892.

In the presence of                JOHN M. PASHLEY.
    H. N. HIGGINBOTHAM,
    EDWARD NEVERS."

The petition further avers that, on June 27, 1892, the commissioner of public works of said city issued a permit under said ordinance to construct said bridge or passageway in the following words and figures, to-wit:

"DEPARTMENT OF PUBLIC WORKS.          ⎫
    J. FRANK ALDRICH, *Commissioner.*   ⎬
    E. LOUIS KUHNS, *Deputy Commissioner.* ⎭
                                *June 27, 1892.*

"In pursuance of an ordinance, passed by the city council June 6, 1892, permission is hereby granted to said John M. Pashley or his assigns to construct and use a passageway or bridge across the alley running between lots 9, 10 and 11 on one side, and lot 6 in assessor's subdivision of lots 6, 7, and 8, etc., on the other, all in block 13, Fort Dearborn addition to Chicago, said .alley in block, bounded by State street, Wabash avenue, Wash-

ington and Madison streets; this permit is issued to and accepted by said John M. Pashley or his assigns upon the condition that the said bridge shall be constructed of incombustible material and satisfactory to the commissioner of public works, and further that the lower portion of said bridge shall not be less than eighteen feet above the grade of said alley; all of the work to be done under the supervision and inspection of the department of public works, for which the said John M. Pashley, or his assigns, shall pay to the city of Chicago all costs of same and shall also give this department twenty-four hours' notice before commencing the work under this permit. The manner and time of doing said work, and all things therewith connected, shall be in every respect satisfactory to said commissioner. This permit is revocable by the commissioner of public works at any time for cause.  J. FRANK ALDRICH,

*Comr. of Public Works.*

By E. LOUIS KUHNS, *Deputy Comr. of Public Works.*"

The petition represents that the permit above set forth was issued contrary to, and in violation of, law, and is null and void; that on January 1, 1895, Marshall Field & Co., or Marshall Field for them, and for their own private use and convenience in the conducting of their private business in the retail stores carried on in said buildings, unlawfully, knowingly, and with the intent to convert Holden place, a public alley, to their own private use to the exclusion of the public, builded and erected a superstructure, bridge or building from the west side of said "new building" to the east side of said "old building" across said public alley; that said building, bridge or superstructure was constructed of metal, glass and fire-proofing, and was about forty-five feet in width and twenty feet in height; that the lower portion thereof is about eighteen feet above the level of the street in Holden place; that said bridge, building or superstructure, so erected, from January 1, 1895, down to the present time, has been used and occupied by said co-partnership for their own private use and behoof, in the conduct of their business in said store to the entire exclusion of the public; that said co-partnership afterwards on August 15, 1899, erected out of similar material three

additional stories on the top and as a part of said building, making the height of the same about fifty-five feet, and the top of the same about seventy-three feet from the level of the street in Holden place; that said bridge, building or superstructure, as now constructed, is four stories high; that said co-partnership intends to continue to use said superstructure for their own private use in the conduct of their business, to the exclusion of the public.

The petition avers that said superstructure is a permanent obstruction and encroachment upon said public street or alley, and a conversion thereof to the use of private persons to the exclusion of the public, and a purpresture and a public nuisance; that on October 23, 1900, the relator, Albert Kocourek, caused a demand in writing to be served upon Lawrence E. McGann, commissioner of public works of said city, a copy of which demand is attached to the petition as an exhibit; that on October 30, 1900, relator served a demand in writing upon said city of Chicago by delivering the same to William Loeffler, city clerk, a copy of which demand is attached to the petition and made an exhibit; that neither the city nor the said commissioner of public works has removed said superstructure or taken any action to have the same removed, but have refused and neglected to do so.

The petition prays that a writ of *mandamus* may issue directed to the city, or to any officer thereof charged with the duty of so doing, commanding said city or officer, or both, that he or they remove said building, bridge or superstructure forthwith, and without delay, and in such manner as is required by the ordinances of the city, and that such other and further orders may be made as justice may require.

The written demand, served upon the commissioner of public works by the relator on October 23, after describing the superstructure in question, contains, among other things, the following words, to-wit: "And I hereby notify you that I am a citizen and tax-payer of the city

of Chicago, county of Cook and State of Illinois, and as such citizen and tax-payer I hereby demand of you, as such commissioner of public works of the city of Chicago, that you as such commissioner  *  *  *  take such steps and perform such acts as may be necessary to remove or cause to be removed said building, superstructure or bridge, and that you remove said building, bridge or superstructure without delay." The written demand, served upon the city or city clerk, after describing the superstructure in question, contains the following words: "And I hereby notify you that I am a citizen and tax-payer of the city of Chicago, county of Cook and State of Illinois, and, as such citizen and tax-payer, I hereby demand that, as such municipal corporation, you perform and do the duties devolving upon you under the laws of the State of Illinois, and the ordinances of the city of Chicago, and that you take such steps and perform such acts as by law you are commanded to do, and that may be necessary to remove or cause to be removed said building, bridge or superstructure, and that you remove said building, bridge or superstructure without delay."

On February 23, 1901, the city of Chicago filed its answer to the petition whose contents are above stated.

The answer of the city denies that "said relator is a resident and a citizen of the city of Chicago, or that said relator is a tax-payer in the city of Chicago;" but admits substantially all the various allegations of the petition as to the platting and surveying of the property in question, and also admits "that from said seventh day of June, A. D. 1839, said strip of land has, down to and including the present time, been accepted and used by the public as a public street or alley." The answer of the city also admits the ownership by Marshall Field of the lots in question, and of the buildings thereon, abutting upon the east and west sides of said alley, as stated in the petition.   It also admits that the statutes of the State and the ordinances of the city in regard to nui-

sances and obstructions upon public streets and alleys are as set forth in the petition, except that one of the ordinances in question is alleged to confer upon the commissioner of public works a discretion as to the removal of such obstructions.

The answer of the city further admits that the city is bound to maintain the public streets and alleys for the uses and purposes for which they were dedicated, but denies that it is the duty of the city to prevent such use of such streets and alleys as will not in any way interfere with their use by the public, and avers that there has been a custom or practice in the city to permit such use of the public streets and alleys by adjacent owners as does not interfere with their use by the public, and that the statutes and ordinances in question have been construed by the public authorities as relating only to such encroachments as interfere with the use by the public of the streets and alleys for public purposes, and not as requiring the city to interfere with such use thereof by adjacent owners as may be valuable and beneficial to such owners and the public, without in any way interfering with the use thereof by the public for the purpose for which the same were dedicated. The answer admits the passage by the city of the ordinance of June 6, 1892, the execution by John M. Pashley of the acceptance of the ordinance, the issuance to said Pashley of the permit in accordance with the terms of the ordinance, and admits also the construction of the bridge in question by Marshall Field, but denies that it is as wide and as high as alleged in the petition. The answer denies that the city had no power to pass the ordinance, and also that the permit issued thereunder is null and void. The answer admits that the "new building" and "old building" are used as parts of the retail establishment of Marshall Field & Co., and avers that the crossing of the said alley from one building to the other in large numbers, by those members of the public, who patronize said store, is a

proper use of Holden place as a public alley, and that said bridge is constructed and used for the purpose of facilitating the passage across the alley by that portion of the public, desiring to cross the same from one of said buildings to the other, and that said crossing is facilitated by the construction of said bridge, and is a great accommodation and of great use to the public in crossing the alley; that thereby great inconvenience and danger are avoided by persons crossing from one building to the other, who, if they crossed upon the surface of the alley, might encounter the teams passing through the same.    The answer denies that the use of the alley is a private use and one not authorized by its dedication as a public alley, and denies that it interferes with the use of the alley by the public. The answer of the city avers, that the cost and expense of improving Holden place has been paid and defrayed by the owners of the lots in block 13 through special assessment proceedings for that purpose. The answer admits "that the said petitioner caused a demand to be made upon Lawrence E. McGann, commissioner of public works of the city of Chicago, as in said petition set forth; and that said petitioner also, on the 30th day of October, A. D. 1900, served a demand upon William Loeffler, city clerk of the city of Chicago, as set forth in said petition." The answer denies that the relator, Kocourek, ever claimed to the city that the bridge in question interfered with the use of Holden place by the public as a public alley, or with the use thereof by any individual, or with his own use thereof, and that he "has not at any time objected to any other bridge across any alley or street in the city of Chicago, although he at all times had full knowledge of the existence of other bridges crossing other public alleys of the city of Chicago, as in this answer mentioned."

The answer avers, that the use of said bridge is not a detriment, but a benefit, to the city of Chicago and its citizens, and avers that said Marshall Field & Co., in re-

turn for the benefit accruing to them by reason of the use
of said bridge by the public under said ordinance, pay
to the city, by way of compensation, the sum of $5000.00
per annum, and that the same is a fair and just compen-
sation so long as the use of such bridge in nowise inter-
feres with the use and enjoyment of Holden place by the
public as an alley. The answer further charges, that the
petitioner had no interest of any kind in said alley, or in
any part of Fort Dearborn addition to Chicago. It also
avers that under the laws of the State and the ordinances
of the city, the city is authorized to construct passage-
ways and viaducts over the streets and alleys thereof for
the furtherance of the public convenience. The answer
admits that the bridge over said Holden place is "con-
structed and owned by a private individual," but never-
theless claims that it subserves the public good. It is
also averred that the ordinance of June 6, 1892, was and
is binding upon the commissioner of public works, and
that he is bound to obey and carry out the provisions
thereof. The answer then sets up that Marshall Field
& Co. are interested in the subject matter of this pro-
ceeding, and should be notified of the same. The answer
also denies in general terms that the commissioner of
public works is required by law to remove said bridge,
or that petitioner is entitled to the relief asked by him.

On April 1, 1901, the People herein, upon the relation
as aforesaid, filed a demurrer to that part of the answer
filed by the city of Chicago which follows the denial
in the answer that the relator is or was a citizen or tax-
payer, showing therein, as causes of demurrer, that the
city's answer raised no substantial issue of fact and pre-
sented no issuable defense or defenses, but presented im-
material and irrelevant matters, and was equivalent to
a demurrer to the petition, and was in other respects
uncertain, informal and insufficient.

On April 10, 1901, a motion of Marshall Field, there-
tofore made to appear and answer the petition, was

allowed, and leave was thereby given to said Marshall Field to file an answer to the petition.

On the same day, to-wit, April 10, 1901, an answer entitled the "Answer of Marshall Field and Marshall Field & Co., a corporation organized under the laws of the State of Illinois" was filed. This latter answer denies "that said relator is, or ever was, a resident or a citizen of the city of Chicago, or that said relator is, or ever was, a tax-payer in the city of Chicago." In all other respects it is substantially the same as the answer filed by the city, with the exceptions hereinafter mentioned. It denies some of the statements in the petition as to the surveys and plats and subdivision and re-subdivisions and conveyances mentioned in the petition, but it admits that the United States, after making a record of the plat referred to in the petition, sold the lots in said block 13 and "thereby dedicated to the public use, as an alley, a strip of land forty (40) feet in width extending from Randolph street, south through said block thirteen (13) to Washington street, and that said strip of land is now known and designated as Holden place; and that said strip of land was designated on said plat as an alley," etc. It admits the construction of the bridge at the place and in the manner already specified, and also admits the passage of the ordinance of June 6, 1892, by the city council of Chicago, and that the original or first bridge named in the petition was constructed across Holden place, connecting the "old building" and the "new building" of Marshall Field prior to May 1, 1893, under a permit issued by the commissioner of public works of the city of Chicago. It also admits "that the said petitioner caused a demand to be made upon Lawrence E. McGann, commissioner of public works of the city of Chicago, as in said petition set forth, and that said petitioner also, on the 30th day of October, 1900, served a demand upon William Loeffler, then the city clerk of the city of Chicago, as in said petition set forth." It furthermore avers that Mar-

shall Field and Marshall Field & Co. have for several years last past, in return for the benefits accruing to them for the use of said bridge, paid to the city $5000.00 per annum. The answer furthermore avers, that the maintenance of the bridge does not interfere with, or cause any obstruction to the full and complete use of Holden place as a public alley of the city of Chicago by the petitioner, or by the public at large of the said city and of the State of Illinois, and that no right or interest of the public of any kind is or has been interfered with in any way by the construction and maintenance of the bridge. This answer further sets up, that the present suit is prosecuted "solely for the purpose of inducing these respondents to pay money, or some other valuable consideration, to secure the discontinuance of the said proceeding, and these respondents aver that such use of the process and jurisdiction of this court is improper and unlawful, and is a bar to the further prosecution of said suit."

On April 10, 1901, the petitioner, that is to say, the People, upon the relation as aforesaid, filed a demurrer to all of said last named answer, except that part of the answer which denies that the relator herein is, or was, a citizen or tax-payer, and set up the same causes of demurrer, as were set up by the petitioner in the demurrer filed by it to the answer of the city.

This case was submitted to the court and taken under advisement at the June term, 1901, under the state of pleadings as above set forth.

The disposition, which, as it seems to me, ought to be made of the case in view of the foregoing facts, is set forth, and the reasons therefor are given, in the following opinion:

This case, as presented by the present record, comes on for consideration upon demurrers to all of the answers of the respondents, except those portions of such answers, which deny that the relator is or was a resident or citizen or tax-payer of the city of Chicago. Appar-

ently, and upon the face of the record, there appears to
be an issue of fact as to the residence and citizenship of
the relator. I leave, for the present, this apparent issue
of fact, and will consider the issue of law, made by the
demurrers to all of the answers except the allegations
thereof as to residence and citizenship.

*First*—The prayer of the petition in this case is for a
writ of *mandamus* against the city of Chicago, or an ap-
propriate officer of such city. While the answer of the
city sets up many matters and makes many denials, such
matters and such denials amount mainly to mere conclu-
sions of law and fact. For instance, the answer, while
admitting that the alley in question is a public alley be-
longing to the city of Chicago, yet avers that the use of
the bridge, built over it as a passageway for the custom-
ers of Marshall Field & Co. from one to the other of their
buildings, does not interfere with the use of the alley by
the public. This, however, is a mere conclusion or argu-
ment from the fact, that the bridge is eighteen feet above
the surface of the alley. It is argued that, inasmuch as
the public, using the alley, can pass under the bridge,
they suffer no injury or detriment from the existence of
the bridge. It is a well settled principle of pleading in
*mandamus* cases, that the return to the alternative writ
should contain positive allegations of fact, and not mere
inferences from facts. An argumentative return is bad.
The return or answer should set forth the facts relied up-
on clearly and positively, and not by way of argument or
inference. (High on Ex. Legal Rem. secs. 460, 472.) More-
over, where the question involved concerns the right of
a private citizen to encroach upon a public street by the
erection of an obstruction, the averment, that the ob-
struction so erected does not injure any person, does not
change the case. (*Hibbard & Co.* v. *City of Chicago*, 173 Ill.
91). "The permanent encroachment upon a public * * *
street, unauthorized by the legislature, and the creation
of a purpresture therein, which obstructs the free and

uninterrupted passage of the public, is, as a matter of law, a public nuisance. The matter of inconvenience to the public, or that sufficient of the street may remain unobstructed to still accommodate the public travel, cannot be considered." (*Smith* v. *McDowell*, 148 Ill. 51). In respect to nuisances the law will not balance public conveniences with inconveniences, and when, in prosecutions or actions for nuisance, the violation of the public right is clear, no excuse, based upon public convenience, will be allowed to protect the person or corporation committing the nuisance from civil or criminal prosecution. (*Seacord* v. *People*, 121 Ill. 623).

Here, after eliminating or leaving out of consideration all the averments in the answers of the respondents, which amount to mere conclusions of law, or mere inferences from facts, the answers admit the material allegations of the petition. The answer of the city admits that Holden place, forty feet wide, is, and always has been, a public alley. The answer of Marshall Field and Marshall Field & Co. is somewhat evasive upon this subject, but substantially admits the public character of the alley. It concedes, that Marshall Field & Co. obtained a permit from the city to construct and use the bridge, and that they pay the city an annual compensation of $5000.00 for the privilege of using the bridge. They thus concede the ownership of the alley by the city as a public alley. It is idle to suppose that they would use a bridge over the alley under a permit from the city, and pay the city a large annual compensation for its use, if it was a mere private alley, and the city, as the representative of the public, had no interest in it.

The answers admit, that the bridge in question is owned and used by private parties for a private purpose. Some averments are made with the view of showing, that the parties, who pass over the bridge from one building to the other, are a part of the public; but it sufficiently appears from all the statements in the answers, that

these persons are none other than the customers of Marshall Field & Co., and that the bridge is used in the interest of the private business of that firm.    Therefore, enough of the allegations, made in the petition, are admitted in both of the answers to raise *the legal question, whether a city has the right to grant the use of a public street or alley to a private person or partnership for a private, and not a public, use.*    Inasmuch as this legal question arises from the admitted facts of the answers, it perhaps was unnecessary for the relator to demur to that portion of the answer, which contains such admitted facts.    Under the former practice in proceedings for *mandamus,* if the return to the alternative writ controverted no fact alleged in the writ, the return was held to have the effect of a demurrer only.    (*People ex rel.* v. *Town of Mount Morris,* 145 Ill. 427).    In *People ex rel.* v. *Miner,* 46 Ill. 384, we said that a demurrer to the return is unnecessary, when no material fact is controverted by the return, because then the return itself is nothing more than a demurrer to the writ, and no question is raised except a question of law.    But, if this were not so, the question of law already stated is certainly raised by the demurrer of the relator.    (*People ex rel.* v. *Salomon,* 46 Ill. 333).    Although the demurrer may be unnecessary, yet the fact of filing the demurrer does no prejudice to the right of the relator to insist upon the question of law, raised by the admitted facts.    (High on Ex. Legal Rem. secs. 488, 492, 494; 13 Ency. of Pl. & Pr. pp. 706, 707).

The question of law, thus raised by the admitted facts of the answers, and by the demurrers to such admitted facts, has already been decided by this court in a case, which concerned, and had reference to, the very bridge or structure now under consideration.    In *Field* v. *Barling,* 149 Ill. 556, Henry A. Barling and others filed a bill against Marshall Field and others to enjoin them from building or constructing this very bridge across the alley, known as Holden place or Holden court.    In that case,

the bill of complaint, which was filed by owners of property abutting upon Holden place and lying near the buildings of Marshall Field & Co., alleged that the latter intended to construct a certain bridge or passageway, connecting the old and new buildings above mentioned; and the answer admitted the intention to build the proposed bridge or passageway for the purpose alleged, and described in detail the particular structure proposed to be built. The circuit court, on the hearing, rendered a decree enjoining Marshall Field & Co. from constructing any bridge across Holden place. This court affirmed that decree. John M. Pashley was a party to that proceeding. As the bill was filed in that case by private parties to prevent a threatened injury to their property, it was necessary to show that the erection of the proposed structure would result in special damage to their property, different in character from that sustained by the public at large. But while, in this respect, that case differs from the case at bar, yet the substantial question involved is the same here as the question, which was decided there. The ordinance of June 6, 1892, giving John M. Pashley and his assigns permission to construct and use the bridge, was introduced in evidence in that case; and so, also, was the permit, issued by the commissioner of public works to Pashley and his assigns, introduced in evidence in that case; and so, also, was the acceptance by Pashley of the conditions contained in the ordinance of June 6, 1892, introduced in evidence in that case. We there said (p. 565): "It will not be necessary to cite authorities in support of the proposition, that a private individual cannot appropriate to his own exclusive use a portion of the surface of a street, dedicated to the public use. Before Holden place was dedicated to the public as a street, the title of the United States, the original proprietor, was not confined to the surface of the ground, but its title extended upward, embracing the light and air as well as the soil, and the dedication of

the strip of land for a public street embraced not only the surface of the ground, but the light and air above, and an individual has no more right to obstruct the light and air above the street than he has to obstruct the surface of the soil." We also there said, quoting from *Barnett* v. *Johnson*, 15 N. J. Eq. 481: "The column of light and air above the road-bed, whether of land or water, is as much a part of the highway as the road-bed itself. Take them away, and there would be left no public passage. By its being declared a highway by the sovereign power, the light and air above it become again the common property of all, which all may breathe and use whenever they may legally touch it, whether in the road or along its sides.  *  *  *  When cities and villages have been built up along a public highway, the right to light and air from it becomes vested, and even the legislature would have no more right to deprive them (abutting owners) of it without compensation than they would have to draw off the water from a navigable stream."

In *Field* v. *Barling, supra,* we had occasion to pass upon the ordinance of June 6, 1892, which is set forth in the petition in this case, and we there said (p. 566): "But the city of Chicago passed an ordinance, which purported to authorize the construction of a bridge or passageway, and it becomes important to inquire in what manner the ordinance affected the rights of the parties in interest. The ordinance does not purport to grant the right for any public purpose. The use to be made of the street is a private one, solely for appellants' (Marshall Field & Co.'s) benefit in the transaction of their private business. Clause 7 of section 62, chapter 24, of the Revised Statutes, confers power on cities, organized under the general Incorporation act as is the city of Chicago, to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharfs, parks and public grounds, and vacate the same. But there is nothing in this section of the statute, or in

193—36

any other portion of the general Incorporation act, which confers the power on the municipality to devote a street, or any part thereof, to a mere private use. By the making of the plat in conformity to law there was a statutory dedication. The fee of the street passed to the city of Chicago, but the city held the fee in trust for the public, and for no other purpose. While the city had ample power to control, regulate and improve the street in such manner as the demands of the public required, the law conferred no authority on the city to devote the alley to private uses." Reference is there made to the case of *Smith* v. *McDowell*, 148 Ill. 51, where a city passed an ordinance to vacate a portion of a street for the purpose of allowing a private individual to use that portion for a part of a building about to be erected; and it was held, that the city had no power to devote the streets to that purpose, it being there said: "The municipality, in respect of its streets, is a trustee for the general public, and holds them for the use to which they are dedicated. The fundamental idea of a street is, not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it." Quoting from *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38, it was further said: "Whatever title to these public grounds may be vested in the city, she has not the unqualified control and disposition of them. They were dedicated to the public for particular purposes, and only for such purposes can they be rightfully used. For these purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use, but she cannot alien or otherwise dispose of them. At most, she but holds them in trust for the benefit of the general public. * * * Holding them in trust for the public, and having no authority to convey or divert them to other uses, it would seem inevitably to follow that they can have no power to grant to individuals rights or easements in the streets, which might in

any way interfere with the duty of preparing them for public use.  *  *  *  It is not claimed that the use of the streets can be permanently granted for private purposes, and we recognize as unquestionable law that the use of the streets  *  *  *  must be for the public, and that no corporation or individual can acquire an exclusive right to their use, or to the use of any part of them, for private purposes."

Other cases are referred to in *Field* v. *Barling, supra,* and it was there held, not only as a general doctrine, that a private individual cannot appropriate to his own exclusive use a portion of a public street dedicated to a public use, whether such portion be a part of the surface of the soil or a part of the light and air above the soil, but it was also held, in reference to the very ordinance here relied upon, that it did not purport to grant the right to build and use the bridge for any public purpose, but only for a private use, and that the law conferred no authority on the city to devote this particular alley, known as Holden place, to private uses.

The doctrine of the case of *Field* v. *Barling, supra,* has been endorsed and followed in a number of later cases. In *Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91, where, by resolution of a city council, an individual or corporation was authorized to erect an awning in a manner prohibited by an existing ordinance duly passed, we said (p. 96): "The public streets of a city are dedicated to the public for public use and are subject to the control and management of the city council, but that body has no power to alien or otherwise encumber such streets so long as they are public streets, but must hold them in trust for public uses only. The municipal corporation can grant no easement or right therein not of a public nature, and the entire street must be maintained for public use; hence no individual or corporation can acquire any portion of the street for exclusive private use to the exclusion of the public. The city council has no power to grant such use.

(*Field* v. *Barling*, 149 Ill. 556.)   Whilst it may grant individuals or corporations a temporary use for such time, and in such way as not to interfere with public use, yet there is no power in the municipality to sell or grant for private use a public street and exclude the public therefrom.   (*City of Quincy* v. *Jones*, 76 Ill. 231.)   A permanent encroachment upon a public street for a private "use is a purpresture, and is, in law, a nuisance."   In that case it was further said: "With an ordinance in existence prohibiting the erection of awnings, a resolution of this character, amounting to a mere license to this particular firm, is a special privilege granted to one by license, which, by the general ordinance applicable to all the citizens within the corporate limits of the city of Chicago, is prohibited to others.   Whatever is prohibited by the constitution of the State from being done by the legislature cannot be done indirectly through another body, and an ordinance of a municipal corporation must be in harmony with the general laws and constitution of the State, and whenever such ordinance comes in conflict with the constitution it is void.   A municipal corporation cannot confer power upon one person to do an act, which is prohibited to another having an equal right to do the same act, and ordinances cannot favor or discriminate against any person or class of persons, but must be uniform and of general operation within the corporate limits.   \* \* \*   The right of the public to the exclusive use of the streets for public purposes is inconsistent with the right of a private citizen to encroach thereon by the erection of a permanent structure.   The streets are held in trust by the municipality, and this fact prevents the municipality from authorizing any encroachment on or obstruction of them by such structures.   The mere consent of the city council by resolution or order gives no vested right.   \* \* \*   The averment that the awning so erected does not injure or obstruct any person does not change the case.   The sole question to be determined is,

is it an encroachment on the street of the city, and if so, it is a purpresture."

In the case at bar, the petition refers to general ordinances of the city of Chicago, which require the owners of obstructions upon streets to remove the same, and provide for the infliction of penalties for failure to make such removal after notice. The existence of these general ordinances is admitted in both of the answers. The ordinance of June 6, 1892, confers upon Pashley and his assigns a special privilege to obstruct a public street, whereas other citizens are prohibited by general ordinances from placing such obstructions upon the streets. The ordinance of June 6, 1892, is therefore void and unconstitutional upon the general ground that a municipal corporation cannot confer power upon one person to do an act, which is prohibited to another, having an equal right to do the same act. (*Hibbard & Co.* v. *City of Chicago, supra; Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9).

Again, in *Snyder* v. *City of Mt. Pulaski,* 176 Ill. 397, we said (p. 402): "The streets of a city are dedicated for public use, and for these purposes the city council may improve and control them and adopt needful rules for their management and use. But that body has no power to alien or otherwise encumber such streets so long as they are public streets, but must hold them in trust for public uses only, and hence no easement or right therein not of a public character can be granted by a municipality, or acquired by any individual or corporation for exclusive private use to the exclusion of the public.  *  *  *  A permanent encroachment upon public streets for a private use is a purpresture, and is in law a nuisance.  *  *  *  Such permission to so use the street is not binding upon the city, and is not irrevocable. The municipality having no power to grant such permanent use, there can be no estoppel against it from requiring the street to be open in its entirety, because no estoppel can arise from an act of the municipal authorities done without authority

. of law.  *  *  *  Appellant acquired no right  *  *  *
against the municipality by estoppel, nor by any right
conferred by the ordinance, because the right conferred
was a mere private use, and that private use created a
purpresture."

Again, in *Pennsylvania Co.* v. *City of Chicago*, 181 Ill. 289,
we said (p. 296): "The title of the streets is vested in the
city, and it has the conservation, control, management
and supervision of such trust property, and it is its duty
to defend and protect the title to such trust estate. The
city has no power or authority to grant the exclusive use
of its streets to any private person, or for any private
purposes, but must hold and control the possession ex-
clusively for public use, for purposes of travel and the
like.  *  *  *  The rule is, that all public highways, from
side to side and from end to end, are held for the use of
the public, and no other safe rule can be adopted."

It is unnecessary to consider or discuss the numerous
cases referred to by counsel for respondents, because the
particular alley here in controversy has already been
held by this court to be a public alley, and the particular
use, to which the bridge here under consideration is put,
has been held by this court to be a private use. It follows,
therefore, that the construction and use of the bridge are
unlawful, and that the city had no authority to grant
to the respondent Marshall Field & Co. the right to con-
struct and use this bridge in the manner already stated.

. If, under the decisions already cited, the city has no
power to permit encroachments upon the public streets
for private purposes, and for the use of private parties,
it is none the less without such power or authority when
it receives a pecuniary consideration from such parties
for the permission granted. The city holds the fee of the
streets in trust for the use of the public, and it has no
right to violate that trust by holding such fee for the use
of private parties simply because such private parties
pay for the privilege granted them.

*Second*—Counsel for the respondent, Marshall Field, or respondents, Marshall Field & Co., in their brief filed in this case, suggest that this court has no jurisdiction to entertain this case, upon the alleged ground that the jurisdiction to issue the writ of original *mandamus*, conferred upon this court by the constitution, must be held to be confined to prerogative cases brought for the purpose of redressing public grievances, and which affect the people of the State at large. It is contended that, here, the application is made for the purpose of obtaining relief in a matter, which is purely private and local. I am unable to concur in this view, and think that this court ought to take jurisdiction, in the exercise of its prerogative power to issue the original writ of *mandamus*, for the reasons set forth in the dissenting opinion in the case of *People ex rel. Kocourek* v. *City of Chicago and Schlesinger & Mayer*, (*ante*, p. 525.) The issuance of the writ is proper not only for the reasons there set forth, but also for the further reasons hereinafter stated.

As has already been said, this writ is asked against the city of Chicago as a municipality, or its officers. The issuance of the writ was not asked as against Marshall Field, or Marshall Field & Co. Marshall Field has been made a party to the proceeding in pursuance of section 7 of the act in regard to *mandamus*, which provides that any person other than the original defendant may be made a defendant, if it shall appear to the court that he has, or claims, any right or interest in the subject matter. The interest of Marshall Field or said firm is thus merely incidental to the relief sought against the municipality. Now, the city of Chicago, the main and principal respondent, makes no challenge of the jurisdiction of this court either in its pleadings or in the brief of its counsel; nor, indeed, does Marshall Field or the firm of Marshall Field & Co. challenge the same, except so far as a suggestion on that subject is made in the brief of their counsel. The respondents do not in their answers set up any alleged

want of jurisdiction in the court. No motion has been made by either respondent to dismiss the cause for want of jurisdiction. When leave was asked to file the petition for *mandamus* in this case, it was not opposed upon the ground that the court had no jurisdiction to issue it. On the contrary, the parties have submitted themselves to the jurisdiction of the court by filing answers, which claim defenses' upon other grounds than the want of jurisdiction. Without any challenge of the jurisdiction in any way the cause has been submitted to this court for its determination.

It is, however, contended by counsel for Marshall Field and Marshall Field & Co., that the court should not entertain jurisdiction to compel the city to remove the obstruction in question, upon the alleged ground that there is another remedy by indictment and abatement under the Criminal Code for the accomplishment of the same object. It is true that, prior to the revision of the statutes in 1874, it was held that, where a highway had been obstructed after it had been opened and traveled by the public, the proper remedy was by prosecution under the statute against the party causing the obstruction, and not by *mandamus* to compel the commissioners of highways to remove the obstruction, and open the road. But, by section 9 of the act to revise the law in relation to *mandamus* in force July 1, 1874, it was provided that "the proceedings for a writ of *mandamus* shall not be dismissed, nor the writ denied, because the petitioner may have another specific legal remedy, where such writ will afford a proper and sufficient remedy." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2682). Accordingly, in *Brokaw* v. *Comrs. of Highways*, 130 Ill. 482, it was held that a defense, upon the ground that there was another remedy by prosecution under the statute, was abrogated by said section 9 of the present act. This is conceded by counsel, but it is contended that the statute, regulating the practice in *mandamus* cases, has no application to practice in this

court, and that, inasmuch as the writ, issued by this court, is the prerogative writ as it existed at common law, the defense of another remedy can be here made, because the common law permitted such a defense.   Undoubtedly, at common law it was an essential condition of the right to the writ of *mandamus* that there should be no other appropriate remedy.

There are two answers to the position of counsel, that we should not entertain this case because another remedy exists by prosecution under the statute.   The first is, that, while the present statute was designed to regulate practice in the circuit courts in *mandamus* cases, and not in this court, yet we have said that "the practice has been, that we will make the practice in such cases in this court conform, as near as may be, to that as regulated by statute for the circuit courts."   (*People ex rel.* v. *Thistlewood*, 103 Ill. 139).   In this case, we have permitted the respondent, Marshall Field, to come in and be made a party under the statute, thereby recognizing the propriety of conforming the practice in this court to the practice as fixed by the statute.   At common law, the respondent, Marshall Field, would have no right to come in and be made a party to this proceeding.

The second reason is that, under the circumstances of this case, it is doubtful whether a prosecution under the statute, as insisted upon, would be an effective and adequate remedy to secure the relief sought by the present writ of *mandamus*.   The city of Chicago passed an ordinance on June 6, 1892, permitting Marshall Field or Marshall Field & Co. to erect the obstruction here complained of, and, in pursuance of that ordinance, a special permit was granted for the construction and use of the bridge. In view of this ordinance, and the permit issued under it, it is questionable whether the penalty, prescribed by the statute, could be enforced against the parties creating the obstruction.   Although the city had no power to pass such an ordinance, or to grant such a permit, yet

both might be set up as a protection in a prosecution for the statutory penalty. Liability for the creation of obstructions of public streets has generally arisen when such obstructions were created *without the authority of the city.* (*Stephani* v. *Brown,* 40 Ill. 428; *Gridley* v. *City of Bloomington,* 68 id. 47). In *Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91, we said (p. 98): "Where the city has authorized a temporary use which causes a temporary obstruction, one having been licensed to exercise such temporary use would not be liable for a penalty, under the ordinances, for obstructing the street, as it was permitted as a matter of grace or favor. That such permission was given may be implied from circumstances. (*Gridley* v. *City of Bloomington,* 68 Ill. 47). But when the city demands the removal of such a structure, it, if permitted to remain thereafter, becomes a nuisance." (See also *Snyder* v. *City of Mt. Pulaski,* 176 Ill. 397).

*Third*—It is claimed on the part of counsel for the respondents, that those portions of the answers, which deny the citizenship and residence of the relator, Albert Kocourek, present an issue of fact which has not been determined.

In regard to the issue of fact, made by this denial of the respondents, it is to be noted that neither party has asked for a reference for the determination of such question of fact. This court is without power to decide questions of fact without a reference to some commissioner to take testimony, or to some circuit court to try the question of fact before a jury. The cause was submitted to this court at the June term, 1901, upon the pleadings as they stand, and neither party has made any motion to set aside this submission.

We have decided in a number of cases that, "where the object is the enforcement of a public right, the People are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested, as a citizen, in having

the laws executed, and the right in question enforced."
(*County of Pike* v. *People*, 11 Ill. 202). In the latter case, we
said (p. 208): "The object of the suit is not a matter of
individual interest, but of public concern. Any citizen of
the county, especially of the locality interested in hav-
ing the improvement prosecuted, could become the rela-
tor, and obtain the *mandamus*." Here, the object of the
suit is a matter of public concern and the enforcement
of a public right, and, therefore, it is sufficient that the
present relator is interested merely as a citizen in hav-
ing the laws executed. To the same effect are the follow-
ing cases:  *City of Ottawa* v. *People ex rel.* 48 Ill. 233; *Hall*
v. *People ex rel.* 57 id. 307; *School Trustees* v. *People ex rel.* 71
id. 559; *Village of Glencoe* v. *People*, 78 id. 382; *People ex rel.*
v. *Board of Education*, 127 id. 613; *People* v. *Suburban Rail-
road Co.* 178 id. 594; High on Ex. Legal Rem.—3d ed.—
sec. 431.

In *Hall* v. *People, supra,* where the *mandamus* was
against the commissioners of the highways of a township
to compel them to open a certain highway, it was held
to be sufficient if the relators resided in the township.
So, in *School Trustees* v. *People, supra,* where the *mandamus*
was to compel certain trustees of schools to form a school
district, it was held to be sufficient if the relator showed
that he had a residence in the school district. From
these authorities, it would seem that the term "citizen-
ship," as used in the cases referred to, is regarded as
synonymous with the term "residence."

Inasmuch as the People are the real party prosecut-
ing this suit, and the relator is only required to have
such interest as any citizen or resident of Chicago would
have in the execution of the laws, a failure to establish
such residence or citizenship by proof introduced upon
a trial of the question of fact would seem to be a mere
irregularity.

There is, however, some slight evidence appearing in
the record submitted to us, that the present relator was

a citizen or resident of the city of Chicago. The petition alleges, that the relator is a resident and citizen of Chicago, and also alleges that, on the 23d day of October, A. D. 1900, the relator served a written demand upon the commissioner of public works of the city, and, also, that, on the 30th day of October, A. D. 1900, he served a written demand upon the city clerk of the city of Chicago. Both of the answers admit that the petitioner caused these demands to be made in writing upon the persons and at the times named, "as set forth in said petition," or "as in said petition set forth." Upon turning to the petition we find that the written demands are made exhibits thereto. The written demand, made upon the commissioner of public works, contains the following language: "And I hereby notify you that I am a citizen and tax-payer of the city of Chicago, county of Cook and State of Illinois, and as such citizen and tax-payer I hereby demand of you," etc. The written demand, made upon the city of Chicago, or its city clerk, contains the following language: "And I hereby notify you that I am a citizen and tax-payer of the city of Chicago, county of Cook and State of Illinois, and as such citizen and tax-payer I hereby demand," etc. The admission, that these demands were made as in the petition set forth, is an admission that they were made by the relator as a citizen of the city. If he was a citizen on the 23d and 30th days of October, 1900, he will be presumed to have continued to be a citizen up to the date of the filing of the petition in this case on February 8, 1901. It is a general rule that, when a state of things is once established by proof—and in the present case the allegation of the petition and the admission of the answers constitute proof—the law presumes that such state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. (1 Greenleaf on Evidence, pars. 41, 42; *Glos* v. *Randolph*, 138 Ill. 268; *White* v. *White*, 105 id. 313).

In addition to what has already been said, the respondents, by their mode of pleading or answering, have waived their right to insist upon the irregularity in question. The defense, that the relator was not a citizen, is in the nature of a defense in abatement. It alleges, in substance and effect, a disability on the part of the relator to prosecute the suit. The denial of his citizenship is a denial of his possession of the necessary representative capacity to bring the suit. The disability of a party plaintiff must be pleaded in abatement, and the want of representative capacity to bring the suit is such a disability as must be pleaded in abatement. (1 Ency. of Pl. & Pr. p. 3). "Any facts, showing a want of capacity to sue on the part of the plaintiff, should be set up by plea in abatement, unless apparent on the face of the record, in which case the objection can be taken advantage of by demurrer. If not so taken, it is deemed waived.  *  *  * The objection that the plaintiff is not the real party in interest, or that his title to the cause of action is defective, should be taken by a plea in abatement or by demurrer." (1 Ency. of Pl. & Pr. pp. 10, 11). Here, the respondents filed no demurrer to the petition, nor any plea in the nature of a plea in abatement, although, under the act in relation to *mandamus*, the respondent has the right to answer, plead, reply, rejoin or demur. (2 Starr & Curt. Ann. Stat.—2d ed.—2681).

In the case at bar, the respondents have set up the defense in question, which is in the nature of a defense in abatement, and also an alleged defense to the merits of the action, in their answers or returns. In *mandamus* the alternative writ stands in the place of a declaration, to which the return is an answer. Hence, there is no reason why the ordinary rules of pleading should not apply to the proceeding by *mandamus*. Where there is a defense, which constitutes a good plea in abatement, "the respondent cannot rely upon that plea, and at the same time ask the judgment of the court upon the merits of

the controversy, by setting up the facts, upon which he relies as showing that upon the merits a peremptory writ should not issue. By adopting this course he submits his cause to the judgment of that tribunal, and waives his plea in abatement. He elects, in fact, to have that court try the cause upon its merits," etc. (*Silver* v. *People ex rel.* 45 Ill. 224.) Here, the city of Chicago seeks, in its answer, to set up what amounts, in effect, to a plea in abatement, and at the same time to ask the judgment of this court upon the merits of the controversy. By pursuing such course the city has waived its plea in abatement, which consists in the denial of the citizenship of the relator. "Where a defendant in his return to a writ of *mandamus* sets forth matter in abatement, and also sets up facts in defense upon the merits, and asks judgment upon the merits, he thereby waives the plea in abatement and elects to try the cause upon the merits." (Ibid.) The very point here involved was decided in *People* v. *Collins,* 19 Wend. 56. In the latter case commissioners were appointed by the legislature to lay out a road, and the court awarded a peremptory *mandamus* to the commissioners of highways of a town, through which the road was laid, to proceed forthwith to open and work the road as laid out by the State commissioners, and the proceeding was prosecuted in the name of the people upon the relation of the State commissioners; the question was made, whether these commissioners had any right to interfere as relators, and the court held that the people were the real party, and that a private citizen could prosecute the suit as relator; and it was there said: "The defendants have made a return and put the matter in a train for decision on the merits. In this public matter, there is no doubt the proper parties are before the court. In theory the people are always the plaintiffs, and they are actually so when individual right is out of the case. * * * It is a mere question of regularity in the mode of obtaining the writ; and, in analogy to

the like cases, would more properly have been raised on the motion for the alternative *mandamus*, or, if that was *ex parte* and without notice, by a direct motion to set aside the writ as having improvidently or irregularly issued. The Attorney General might then have been consulted, and the suit been summarily arrested, or the defect supplied by an appearance on his part. The return is in nature of a plea, which cannot set up mere matter of irregularity. That an objection of form should come before the return is supported by the reasoning of the chancellor, and several cases cited by him in *Commercial Bank of Albany* v. *Canal Comrs*. 10 Wend. 30. Matter of mere abatement in a plea is overruled by matter in bar. It seems to me, therefore, that it would have been too late to come with this objection if it were well founded in principle." The case of *People* v. *Collins*, 19 Wend. 56, was referred to with approval by this court in *County of Pike* v. *People*, *supra*.

It makes no difference that a motion, made by the petitioner in this case to strike out that part of the answer of the city, which denies the citizenship of the relator, was overruled by this court. Such motion amounted merely to a motion to quash that portion of the return. Where important questions of law are presented by the return, requiring judicial investigation for their correct solution, courts will hesitate to dispose of such questions upon a motion to quash the return. Dubious and important legal questions will not be settled on a motion to quash a return. (High on Ex. Legal Rem.—3d ed.—sec. 488; 13 Ency. of Pl. & Pr. p. 709). In such cases it is discretionary with the court either to quash the return on motion, or to have the cause set down for argument. (Ibid). What was done here was to pursue the latter course.

*Fourth*—It is alleged in the answer of Marshall Field and Marshall Field & Co., that the petitioner in this case is prosecuting the suit, not in the interest of the public, but for the purpose of inducing the respondents to pay

money, or some other valuable consideration, to secure
the discontinuance of the proceeding. No facts are shown
upon which to base any such charge, as is thus made
against the present relator. A demurrer to a declaration,
or an answer, or any pleading, only admits such facts
as are well pleaded. The city, which is the principal re-
spondent in this case against whom the writ is asked,
makes no such charge in its answer. The respondents,
who make it, seem to draw it as a conclusion from the
facts stated in their answer. No such conclusion can
properly be drawn from those facts. The material facts,
admitted in the answer, are that Holden place is a public
alley, and that the city of Chicago has permitted an ob-
struction of that alley by private parties for private pur-
poses. The conclusion, that a citizen, however humble
or unknown he may be, who institutes such a proceeding
in *mandamus* as this, does so for the purpose of extorting
money, is not a conclusion, which can in any legitimate
way be drawn from such facts, as are here admitted. On
the contrary, the natural and legitimate conclusion is
that the relator was performing a public duty at his own
risk and at his own expense because of the failure of the
public authorities or public officials to perform such duty
in his stead.

The prayer of the petition is, that the city, or its offi-
cers, be commanded to remove the bridge in question in
such manner as may be required by the ordinances of the
city. If, therefore, such ordinances require notice before
the city causes the removal to be made, there is no rea-
son why such notice should not be given; and thus the
peremptory treatment which counsel seems to anticipate
will be avoided.

For the reasons above stated, I think that the de-
murrers to the answers should be sustained, and that the
writ of *mandamus* should be awarded in accordance with
the prayer of the petition herein.