THE CHICAGO COLD STORAGE WAREHOUSE COMPANY *et al.*

*v.*

THE PEOPLE *ex rel.* William R. Stirling *et al.*

*Opinion filed December 22, 1906.*

1. MUNICIPAL CORPORATIONS—*a city has no power to authorize elevation of sidewalk for private convenience.* A city has no power to authorize the construction of a bulkhead or platform, occupying the entire sidewalk space in front of a building and elevated several feet above the level of the remainder of the sidewalks, for the purpose of making it more convenient for the occupants of the building to load and unload goods, even though such platform is to be used by the public as a sidewalk.

2. SAME—*public is entitled prima facie to have sidewalk restored to its former level.* Upon awarding *mandamus* to compel the removal of a bulkhead or elevated platform occupying the sidewalk space in front of a building and used by the public as a sidewalk, the public is *prima facie* entitled to have the sidewalk restored to the level it occupied before the raised platform was built.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is a petition for a *mandamus,* filed by the relators, William R. Stirling and others, in the circuit court of Cook county, against the Chicago Cold Storage Warehouse Company, the city of Chicago, Frederick W. Blocki, commissioner of public works, and Michael J. Doherty, superintendent of streets and alleys of said city.

The petition alleges, in substance, that the Chicago Cold Storage Warehouse Company occupies with its warehouse building certain real estate on Indiana avenue, in Chicago; that the sidewalk space in front of said premises was a part of the street in front thereof and belonged to the public, and that the relators were justly and lawfully entitled to the free and unobstructed use thereof; that unlawfully, and in violation of the rights of the relators and the free and unobstructed use thereof, the Chicago Cold Storage Warehouse Company constructed and was maintaining upon such sidewalk space a permanent elevated platform sixty-four feet long, fourteen feet wide and three and one-half feet high, which platform unlawfully obstructed and hindered the use of the sidewalk and required the public in general to climb six steps to reach the same; that it was and is the duty of the said city, Frederick W. Blocki, its commissioner of public works, and Michael J. Doherty, its superintendent of streets and alleys, to remove said obstruction and nuisance, which they have refused to do. The prayer of the petition was for a writ of *mandamus* directing the defendants, and each of them, forthwith to remove the whole of said platform in front of said premises and to restore the sidewalk to the same level which existed prior to the erection of the platform, and to report their action in the premises to the court.

The answer of the respondents denied that the sidewalk space in front of said premises was a part of the street and that they unlawfully obstructed the same, and alleged that the city council of the city of Chicago, by an ordinance duly passed on January 10, 1904, authorized the construction of said platform, and that such construction was not unlawful.

Upon a trial before the court judgment was rendered awarding a writ of *mandamus* substantially as prayed in relators' petition. An appeal was prosecuted to the Appellate Court, where that judgment was affirmed, and a further appeal has been prosecuted to this court.

White, Mabie & Conkey, (William D. Barge, of counsel,) for appellants.

George H. Karcher, (Max M. Grossman, of counsel,) for appellees.

Mr. Justice Wilkin delivered the opinion of the court:

On January 10, 1904, the city council of the city of Chicago passed an ordinance, the first section of which is as follows:

"Sec. 1. That permission and authority be and are hereby granted the Chicago Cold Storage Warehouse Company, its successors and assigns, to build and maintain a platform or bulkhead in front of the premises Nos. 1526 to 1532 Indiana avenue. The said platform or bulkhead shall be elevated above the remainder of the sidewalk two feet and ten inches, more or less, and shall be fourteen feet in width, more or less, for a distance of seventy-four feet, commencing at a point eleven feet north of the south-east corner of the building on said premises, for the purpose of affording to the public a thoroughfare on the Indiana avenue front of said building, and at the same time allow the shipping and delivering of goods from the said building without skids by said Chicago Cold Storage Warehouse Company. Said

platform or bulkhead shall be constructed according to plans approved by the commissioner of public works of the city of Chicago, a copy of which said plans shall be kept on file in the office of the commissioner of public works, and said platform or bulkhead shall be constructed in a safe and workmanlike manner, under the supervision and to the satisfaction of the commissioner of public works.  The grantee herein shall not in any manner change said platform or bulkhead without a permit from the commissioner of public works, and shall at all times keep the same in thorough repair and condition, safe for public travel, and shall so conduct its business of shipping and receiving goods from and to said premises without the use of skids that there shall be as little interference with public travel on said Indiana avenue in front of said premises as possible.  The grantee shall display and maintain a sign at each end of such structure, on which shall be inscribed in letters of sufficient size the words, 'Public sidewalk.' "

Other sections of the ordinance provide that the authority so given shall cease at the end of ten years, or sooner, at the discretion of the mayor; that the grantee shall pay the city, as compensation for the privilege thereby granted, $153.40 per year; that "said platform or bulkhead shall be considered the sidewalk in front of said premises, and shall be subject to all ordinances now in force or hereafter to be in force relating to the use and occupation of sidewalks in Chicago," and that the grantee shall give to the city a bond in the sum of $10,000 to indemnify the city against damage, etc.  The grantee accepted the ordinance and gave the bond before it erected the platform.  The sole question at issue is the validity of the foregoing ordinance.

The city of Chicago is organized under the general City and Village act.  Section 1 of article 5 of that act, relating to the vested authority of the city council, provides as follows: "Seventh—To lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, ave-

nues, sidewalks, wharves, parks and public grounds, and
vacate the same.   *   *   *   Ninth—To regulate the use of
the same.   *   *   *   Fourteenth—To regulate the use of
sidewalks and all structures thereunder.   *   *   *   Twenti-
eth—To regulate traffic and sales upon the streets, sidewalks
and public places."

There can be no question but that the title to all side-
walks is vested in the city in trust for the public, and under
the above section of the City and Village act they are under
the control, supervision and dominion of the city council.
But this control is not 'absolute, but must be exercised ac-
cording to certain well established rules and principles. The
primary use of the streets and alleys of a city is for the bene-
fit of the public, so they may have free and unobstructed
access to and travel over the same. The question as to the
use of public streets for private purposes has been before us
on several occasions and the decisions are uniform thereon.
In the case of *Field* v. *Barling,* 149 Ill. 556, we said (p. 566) :
"The municipality, in respect of its streets, is a trustee for
the general public and holds them for the use to which they
are dedicated. The fundamental idea of a street is not only
that it is public, but that it is public in all its parts, for free
and unobstructed passage thereon by all persons desiring to
use it.   *   *   *   Holding them in trust for the public and
having no authority to convey or divert them to other uses,
it would seem inevitably to follow that they can have no
power to grant to individuals rights or easements in the
streets which might in any way interfere with the duty of
preparing them for public use." In the case of *Pennsyl-
vania Co.* v. *City of Chicago,* 181 Ill. 289, it was again said
(p. 296) : "The rule is, that all public highways, from side
to side and from end to end, are held for the use of the
public, and no other safe rule can be adopted." In *Hibbard
& Co.* v. *City of Chicago,* 173 Ill. 91, the following language
is used (p. 96) : "The public streets of a city are dedicated
to the public for public use and are subject to the control

and management of the city council, but that body has no power to alien or otherwise encumber such streets so long as they are public streets, but must hold them in trust for public uses only. The municipal corporation can grant no easement or right therein not of a public nature, and the entire street must be maintained for public use." To the same effect see *People* v. *City of Chicago,* 193 Ill. 543; *Lowery* v. *City of Pekin,* 210 id. 575; *People* v. *Harris,* 203 id. 272.

Our attention is called by appellants to various other cases which it is claimed announce a different rule, and which, it is said, sustain the ordinance here relied upon; but an examination of them will show that the facts were materially different from the case at bar and from those above cited. They are not, therefore, in point.

The evidence shows that at the time of the passage of the ordinance and at the time of the erection of the platform there was a cement sidewalk in front of the premises fourteen feet wide and on a level with the other sidewalks on that side of the street. The purpose of the erection of the platform was to enable the storage company to load wagons from the edge of the curb and avoid lifting the contents to or from the level of the then existing sidewalk. It cannot be seriously contended that the purpose of the ordinance was for the benefit of the public generally. It was for the convenience of the storage company and those doing business with it at its warehouse. Nor can it be successfully contended that the platform as erected is not a material obstruction to the sidewalk and does not place the general public to great inconvenience in the use of the same. While the ordinance provides that the sidewalk may be used for public purposes, yet in order to use it those passing over it must go up and down five or six steps at either end. If it is not a nuisance and an obstruction, then the city might authorize private parties to erect and maintain bulkheads on every street in the city, of any height. Public streets and

sidewalks cannot be lawfully used for any such purpose. We are of the opinion that the platform in question was a nuisance, and such an obstruction to public travel as entitled appellees to have it removed.

It is further contended that the judgment rendered by the trial court is erroneous in so far as it undertakes to say that the level which existed before the construction of this platform is the proper level of the sidewalk which should be restored, and that there is no evidence in the record as to the official duties of the commissioner of public works and the superintendent of streets and alleys to justify them in removing obstructions. It is sufficient to say that upon the removal of the platform the grade of the walk should be restored to substantially that of the street. It is within the power of the city council, and it is its duty, to restore the walk to a condition that will not materially interfere with public travel and so the public may have easy access thereto. *Prima facie* the public is entitled to have the sidewalk restored to its former level.

As to the other points, the record shows that the city of Chicago is a party defendant, and the judgment primarily is against it or the officials who are made parties defendant and represent it. The first section of the ordinance provides that the platform shall be constructed according to plans approved by the commissioner of public works, a copy of which shall be filed in his office, and it shall be constructed under his supervision and to his satisfaction after a permit has been granted by him.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*